# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEEN HALEEM,

    Plaintiff,

      v.

U.S. DEPARTMENT OF DEFENSE, *et al.*,

    Defendants.

Civil Action No. 23-1471 (JEB)

## MEMORANDUM OPINION

Plaintiff Deen Haleem has served in the military in one capacity or another for over four decades, most recently as a member of the U.S. Army Reserve in an intelligence role that requires him to hold a Top Secret security clearance with access to Sensitive Compartmented Information. In 2022, the Department of Defense informed him that it had made a preliminary decision to revoke his clearance. Seeking to uncover more information about that decision, Plaintiff sent several requests for records to components of DoD and the Department of Justice, which produced some records and withheld others under Privacy Act and Freedom of Information Act exemptions.

After filing and voluntarily dismissing a premature lawsuit against DoD and DOJ, Haleem submitted another round of records requests to those agencies. Dissatisfied with their responses (and, in some cases, the lack thereof), he brought the instant suit. He contends that both agencies violated the Privacy Act and FOIA. He alleges, moreover, that DoD decided to revoke his security clearance based on his race, religion, and national origin in violation of the Fifth Amendment's guarantee of equal protection. Finally, he claims that DoD's actions violated

its own agency guidelines and an Executive Order, rendering them contrary to law under the Administrative Procedure Act.  Defendants move to dismiss, arguing that each claim in the seven-count Complaint is deficient.  Largely agreeing, the Court will grant the Motion for the most part.

## I.  Background

The Court at this stage sets forth the facts as pled in the Complaint, assuming them to be true.  See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  Haleem, a "Palestinian individual of Arab descent who practices Islam," is a master sergeant in the U.S. Army Reserves with a "primary military occupation within the Military Intelligence Branch." ECF No. 1 (Compl.), ¶¶ 41, 107.  To maintain his position, he must hold a Top Secret security clearance with access to Sensitive Compartmented Information.  Id., ¶ 42.

In February 2022, the Defense Counterintelligence and Security Agency (DCSA) — an agency within DoD — notified Plaintiff that it had made a preliminary decision to revoke his security clearance.  Id., ¶ 43.  It provided him with a "Statement of Reasons," citing concerns about Haleem's foreign influences, personal conduct, and handling of classified information.  Id., ¶¶ 43, 125.  The Statement explained that, should Haleem wish to challenge the decision, he could request the records upon which DoD had relied and submit a written response.  See Haleem v. Dep't of Def. (Haleem I), No. 22-3021 (D.D.C.), ECF No. 3-1, Exh. M (Statement of Reasons); see also ECF No. 1-1, Exh. A (Instructions for Responding to a Statement of Reasons).

Plaintiff declines to attach that Statement of Reasons to his Complaint in the present suit. But because his Complaint repeatedly references it, the document is integral to his claims, he attached it in his prior lawsuit on this issue, and it is a government document, the Court takes

judicial notice of it.  See Statement of Reasons; see Banneker Ventures, LLC v. Graham, 798

F.3d 1119, 1133 (D.C. Cir. 2015); see also Democracy Forward Found. v. White House Off. of

Am. Innovation, 356 F. Supp. 3d 61, 62 & n.2 (D.D.C. 2019).

In explaining his discrimination claim, Haleem alleges that the Statement "quotes and

paraphrases almost exclusively" from the results of a DoD investigation into Haleem in 2003.

See Compl., ¶¶ 51, 55.  "[O]ne of, if not the only, source[] of information" for that investigation

was Captain George T. Ferguson IV, "the supervisor of battalion intelligence personnel and

assets."  Id., ¶¶ 111, 114, 116.  Ferguson was a "Caucasian male who . . . identified as Christian,

of European descent, and U.S. national origin" and had been "the subject of harassment,

impropriety, and equal opportunity complaints," including complaints filed by Haleem for

"racism."  Id., ¶¶ 111, 112, 114.  He had also been the "senior rater" on a "negative evaluation"

of Haleem.  Id., ¶¶ 110–11.

A.  2022 Requests

Concerned about Ferguson's influence and hoping to uncover the information necessary

to challenge DoD's decision to revoke his security clearance, Plaintiff began a procedurally

fraught journey in search of helpful materials.  He first submitted records requests in spring 2022

to two components of DoD — DCSA and the Army Intelligence and Security Command

(INSCOM) — and to the FBI.  See Compl., ¶¶ 45, 49, 56.  He sought, among other things, "[a]ll

interagency and intra-agency correspondence pertaining to [him]," "[a]ll interagency and intra-

agency records related to [him]," and "[a]ll investigation and standard forms pertaining to

[him]."  ECF No. 1-1, Exh. D (2022 FBI Request); see Haleem I, ECF No. 3-1, Exh. A (2022 1st

DCSA Request); No. 3-1, Exh. B (2022 2nd DCSA Request); No. 3-1, Exh. E (2022 INSCOM

Request).  He addressed the FBI request to the Office of Information Policy — an office within

DOJ that coordinates administrative appeals and handles initial Privacy Act and FOIA responses for several DOJ components, not including the FBI — but indicated that he was seeking "records . . . held by the Federal Bureau of Investigation[]."  2022 FBI Request; see Compl., ¶ 56 (referring to request as "request to the FBI").

All three agencies responded by summer 2022.  DCSA produced some records, notified Haleem that it was withholding others in whole and in part pursuant to Privacy Act and FOIA exemptions, and informed him that it was making two referrals.  See Compl., ¶¶ 46–47; Haleem I, ECF No. 3-1, Exh. C (2022 DCSA Response).  Specifically, DCSA explained that Haleem's investigative file contained information under the purview of both the FBI and the Army Investigative Records Repository (AIRR), a subordinate DoD agency, so it was referring his request to those agencies to respond directly to him.  See 2022 DCSA Response.  DCSA's letter also noted that Haleem could file an administrative appeal and provided the details necessary to do so.  Id.

INSCOM's response was similar: it produced some records, withheld others, and notified Haleem that it was making a referral to the U.S. Army Reserve Command (USARC), another subordinate DoD agency.  See Compl., ¶¶ 50–52.  USARC, the response explained, would take "action" and "direct[ly] reply to [Haleem]."  Id., ¶ 52; see Haleem I, ECF No. 3-1, Exh. L (2022 INSCOM Response).  Like DCSA, INSCOM informed Haleem of his administrative-appeal rights.  See 2022 INSCOM Response.

The FBI responded both to the request that Haleem had sent directly to the Office of Information Policy and to DCSA's referral.  As to the referral, the FBI released some records and withheld others.  See ECF No. 1-1, Exh. E (2022 FBI Response to Referral).  With respect to Plaintiff's direct request, the Bureau explained that it had conducted a search but was "unable to

identify records subject to the [Privacy/Freedom of Information Acts] that are responsive."  ECF No. 1-1, Exh. G (2022 FBI Response to Direct Request).  If Haleem had "additional information pertaining to the subject of [his] request," the FBI added, he could "submit a new request providing the details."  Id.  Alternatively, it said, he could file an administrative appeal.  Id.

B.  First Lawsuit

Displeased with those responses, Haleem filed a lawsuit in federal court in October 2022.  Haleem I, ECF No. 1 (Compl.).  He alleged, among other things, that DoD and DOJ had violated the Privacy Act and FOIA by unlawfully withholding records.  Id., ECF No. 3 (Haleem I Am. Compl.), ¶¶ 29–41.  The Government moved to dismiss those claims, contending that Haleem had failed to exhaust his administrative remedies.  Id., ECF No. 13 (Haleem I MTD).  Acknowledging as much, Haleem voluntarily dismissed the action.  Id., ECF No. 17 (Haleem I Notice of Dismissal).

C.  2023 Requests

Returning to the drawing board, Haleem set out to "create a 'clean' record of requests" and thus submitted a series of "new FOIA request[s]" in early 2023.  See Compl., ¶¶ 63, 65, 67, 76.  First, he wrote two letters to DCSA, one on March 14 and one on March 15.  Id., ¶ 65 (noting only March 15 letter); ECF No. 14 (Opp.) at 7 (asserting that he also sent a March 14 letter).  Haleem attaches and describes only the March 15 letter, which had as its subject "Privacy/FOIA Appeal."  Compl., ¶ 65; see ECF No. 1-1, Exh. H (2023 2nd DCSA Request).  In that letter, he asked DCSA to produce the records that it was withholding in response to his 2022 request and to conduct "[a] review of the redactions" it had asserted were necessary.  See 2023 DCSA Request.  DCSA's response: crickets.  See Compl., ¶ 66.

Second, Haleem emailed INSCOM with the subject "FOIA Request Appeal" on March 14. Id., ¶ 67; see ECF No. 1-1, Exh. I (2023 INSCOM Request). He explained that he was attaching "an appeal to the FOIA request relating to [INSCOM's] response to [Haleem's] initial request of February 2022." 2023 INSCOM Request. His attachment, in turn, stated that Haleem was seeking, among other things, "[t]he 113 pages that have been withheld" and "a review of the redactions asserted by INSCOM." Id.

Ten days later, INSCOM responded, informing Plaintiff that because he had "previously received all the [nonexempt] records related to [his] request under [its] control and purview," it considered his request "a duplicate effort" and would therefore deny it. See Compl., ¶ 68; ECF No. 1-1, Exh. J (2023 INSCOM 1st Response). The response also noted on behalf of AIRR — to which DCSA had referred Haleem's 2022 request — that all of the responsive records that AIRR could provide had already been delivered to Haleem in INSCOM's 2022 production. Id. It then outlined Plaintiff's administrative-appeal rights. Id.

Plaintiff replied to INSCOM with a letter, styled as an "APPEAL," reiterating his request for the "113 pages originally withheld." ECF No. 1-1, Exh. K (2023 INSCOM Appeal); see Compl., ¶ 69. INSCOM notified Haleem that his "appeal" had been forwarded to the Secretary of the Army. See Compl., ¶ 70; ECF No. 1-1, Exh. L (2023 INSCOM 2nd Response). The Army eventually informed Haleem that his appeal was denied. See ECF No. 14-1, Exh. E (2023 Army Response).

Finally, Haleem sent two letters to DOJ's Office of Information Policy, both on March 14. See Compl., ¶ 76; Opp. at 7 (explaining that Plaintiff "unintentionally" attached only one such letter to the Complaint). In the first, which had as its subject "Appeal of FOIA Determination," he described the FBI's response to his 2022 request and explained that he was

still seeking the records that he had previously requested.  See ECF No. 1-1, Exh. M (2023 1st FBI Request).  The second, which had as its subject "Our Client: MSG Deen N. Haleem," included "Freedom of Information Appeal" in the address block and sought verbatim the same FBI records as Haleem's 2022 request.  See ECF No. 14-1, Exh. B (2023 2nd FBI Request).  The Office of Information Policy confirmed receipt of Haleem's "administrative appeal from the action of the [FBI]."  See ECF No. 14-1, Exh. C (2023 FBI Response).  That was the last Plaintiff heard from DOJ.

     D.  <u>Present Action</u>

     In May 2023, Haleem filed this action against DoD and DOJ.  See Compl.  Against DoD, the Complaint asserts one count under the Privacy Act (Count I), one count under FOIA (Count III), one count under the Fifth Amendment (Count V), and two counts under the Administrative Procedure Act (Counts VI and VII).  <u>Id.</u>, ¶¶ 78–85, 94–99, 106–41.  As to DOJ, the Complaint alleges one count under the Privacy Act (Count II) and one count under FOIA (Count IV).  <u>Id.</u>, ¶¶ 86–93, 100–05.  Defendants move to dismiss, invoking Rules 12(b)(1) and 12(b)(6).  See ECF No. 11 (MTD).

## II.    Legal Standard

     When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the court indeed has subject-matter jurisdiction to hear his claims.  See <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>U.S. Ecology, Inc. v. U.S. Dep't of Interior</u>, 231 F.3d 20, 24 (D.C. Cir. 2000).  "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion [also] imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  <u>Grand Lodge of Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For

this reason, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (citation omitted).  In policing its jurisdictional borders, the court treats the complaint's factual allegations as true and grants the plaintiff the benefit of all reasonable inferences.  See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Rule 12(b)(6), conversely, provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations marks and citation omitted).  In weighing a motion to dismiss, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice."  EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997).  The court "must treat the complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citations omitted).  It need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (cleaned up).

### III.   Analysis

In seeking dismissal, the Government offers multiple reasons why each count is deficient, some related to reviewability hurdles and others to the merits of the claims.  The Court addresses those arguments by count.

   A.  Privacy Act/FOIA (Counts I–IV)

Haleem's first four counts plead violations of the Privacy Act and FOIA against both DoD and DOJ.  See Compl., ¶¶ 78–85 (Count I alleging violation of Privacy Act against DoD); id., ¶¶ 86–93 (Count II alleging same against DOJ); id., ¶¶ 94–99 (Count III alleging violation of FOIA against DoD); id., ¶¶ 100–05 (Count IV alleging same against DOJ).  As to all of these claims, Defendants contend that Haleem failed to exhaust his administrative remedies.  See MTD at 14–25.  The Court mostly — but not entirely — agrees.

Under both the Privacy Act and FOIA, a requester generally must exhaust administrative remedies by fulfilling an agency's administrative-appeals requirements as set forth in its regulations before turning to the courts.  See Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 61–62 (D.C. Cir. 1990); Kearns v. FAA, 312 F. Supp. 3d 97, 107 (D.D.C. 2018).  Indeed, exhaustion of remedies under the Privacy Act "is a jurisdictional threshold to challenging an agency determination."  Kearns, 312 F. Supp. 3d at 107.  In the Privacy Act context, therefore, a plaintiff "must exhaust the administrative remedies established by an agency's Privacy Act regulations before bringing suit" or else face dismissal for lack of jurisdiction.  Mulhern v. Gates, 525 F. Supp. 2d 174, 187 (D.D.C. 2007); see Sandoval v. DOJ, 296 F. Supp. 3d 1, 13 n.5 (D.D.C. 2017).

Exhaustion under FOIA, conversely, does not always require dismissal.  Rather, "failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular

administrative scheme' support such a bar.'"  Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004)

(quoting Hidalgo v. FBI, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003)); see also Kalu v. IRS, 2015

WL 4077756, at *4 (D.D.C. July 1, 2015) (exhaustion under FOIA "is a jurisprudential doctrine

that prevents judicial review if the purposes of exhaustion and the particular administrative

scheme support such a bar") (cleaned up).  So, while dismissal is generally appropriate if a

plaintiff has not exhausted her FOIA claims, it is not warranted in a particular case if enforcing

the requirement would subvert the purposes of exhaustion and FOIA more generally.  Wilbur,

355 F.3d at 677.  The purpose of FOIA's exhaustion requirement is to give the agency "an

opportunity to exercise its discretion and expertise on the matter and to make a factual record to

support its decision." Id. (quoting Oglesby, 920 F.2d at 61).  As this Court has noted before,

even though they are not jurisdictional, FOIA's exhaustion requirements "are not mere

formalities to be routinely ignored, some unseemly morass of bureaucratic red tape."  Cable

News Network, Inc. v. FBI, 271 F. Supp. 3d 108, 112 (D.D.C. 2017).  Instead, exhaustion is

regarded as a "core component of orderly procedure and good administration" — a doctrinal

safeguard that preserves agency authority and judicial efficiency.  Id. (cleaned up).

The relevant regulations here — promulgated by DoD, the parent of DCSA and

INSCOM, and DOJ — provide that a party contesting a Privacy Act or FOIA determination must

submit a timely administrative appeal before seeking judicial review.  See 28 C.F.R. §§ 16.8(e),

16.45(c); 32 C.F.R. §§ 286.11(d), 310.6(d).  A Privacy Act requester must file her administrative

appeal within 60 calendar days of the agency's determination, see 28 C.F.R. § 16.45(a); 32

C.F.R. § 310.6(a), while a FOIA requester has 90 days to do so.  See 28 C.F.R. § 16.8(a); 32

C.F.R. § 286.11(a).  The Government says that Plaintiff failed to comply with these requirements

across the board.

1. *2022 Requests*

Begin with Haleem's 2022 requests, which were sent directly to DCSA, INSCOM, and DOJ/FBI and referred in part by those agencies to the FBI, AIRR, and USARC.  See Compl., ¶¶ 45–47, 49–52; see also 2022 DCSA Response; 2022 INSCOM Response.  The Government contends that, despite being informed of his administrative-appeal rights, he did not administratively appeal any of those agencies' responses in a timely fashion and thus did not exhaust his administrative remedies.  See MTD at 16–17 (observing that "the Complaint is silent as to what steps Haleem took to appeal" any of the determinations within the agencies' allotted timelines and that there is "no evidence in Haleem's pleadings or otherwise to indicate that Haleem timely appealed" them).  While Plaintiff did submit letters to DCSA, INSCOM, and DOJ labeled as "appeals" in 2023 (more on those in Section III.A.2, infra), those came long after the periods allotted by the relevant regulations for Privacy Act and FOIA appeals.  See 2023 DCSA Request; 2023 INSCOM Request; 2023 1st FBI Request; 2023 2nd FBI Request.

Rather than arguing that he did, in fact, administratively appeal the 2022 responses in a timely fashion, Plaintiff tries a different tack: he rejoins that he "constructively" exhausted his administrative remedies.  See Opp. at 13.  Constructive exhaustion "occurs when an agency fails to respond to a request within twenty working days."  Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs., 2023 WL 6389139, at *9 (D.D.C. Sept. 30, 2023) (cleaned up).  In that case, "a requester 'shall be deemed to have exhausted his administrative remedies' and may seek judicial review" of the agency's failure to fulfil its obligations under the FOIA."  Id. (quoting 5 U.S.C. § 552(a)(6)(C)(i)).  This resort to constructive exhaustion does not persuade for the most part.

To start, while it is true that FOIA "recognizes a constructive exhaustion doctrine for purposes of judicial review," Nurse v. Sec'y of the Air Force, 231 F. Supp. 2d 323, 328 (D.D.C.

2002), the Privacy Act does not.  <u>Kearns</u>, 312 F. Supp. 3d at 107 (noting that "the law is clear that [constructive] exhaustion is not available under the [Privacy Act]"); <u>see</u> <u>Barouch v. DOJ</u>, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) (similar); <u>Makuch v. FBI</u>, 2000 WL 915640, at *4 (D.D.C. Jan. 5, 2000) (same).  Haleem's constructive-exhaustion argument could, therefore, at most save the FOIA claims (Counts III and IV) — but not the Privacy Act claims (Counts I and II) — based on his 2022 requests.

Yet it turns out not to cover even the majority of those FOIA claims.  Each of the direct-recipient agencies — DCSA, INSCOM, and DOJ/FBI — and two of the referral-recipient agencies — FBI and AIRR — responded to Haleem's 2022 requests before he filed the instant lawsuit, thereby curing any prior failures to respond and defeating constructive exhaustion.  <u>Oglesby</u>, 920 F.2d at 63–64 ("[A]n administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request before [the operative] suit is filed . . . .  [O]nce the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review."); <u>see</u> 2022 DCSA Response; 2022 INSCOM Response; 2022 FBI Response to Referral; 2022 FBI Response to Direct Request; 2023 INSCOM 1st Response (responding to referral from DCSA on behalf of AIRR); <u>see also</u> ECF No. 16 (Reply) at 5 (noting INSCOM's response on behalf of AIRR); <u>contra</u> Opp. at 3 (contending, "AIRR is yet to respond to Plaintiff at all").  Plaintiff has thus not exhausted any challenge to those agencies' responses to his 2022 requests.

The purposes of both FOIA and its exhaustion requirement, moreover, counsel dismissing claims related to the responses from DCSA, INSCOM, FBI, and AIRR to Haleem's 2022 requests.  The D.C. Circuit has consistently and repeatedly held that "FOIA's administrative scheme 'favors treating failure to exhaust as a bar to judicial review.'"  <u>Wilbur</u>, 355 F.3d at 677

(quoting <u>Hidalgo</u>, 344 F.3d at 1259).  As to the purpose underlying the exhaustion requirement, because he did not administratively appeal those responses, those agencies did not have "an opportunity to exercise [their] discretion and expertise on the matter[s]." <u>Id.</u> (citation omitted). So much for those claims.

There is, however, one referral-recipient agency that continues to ignore Plaintiff to this day: USARC.  <u>See</u> Compl., ¶ 75; <u>see also</u> Opp. at 10 ("USARC failed to respond, timely or otherwise, to Plaintiff and comply with INSCOM's referral of Plaintiff's FOIA request."). Defendants, for their part, do not contest that USARC has ignored the referral.  <u>See</u> Reply at 5. Instead, they proclaim that "Haleem pleads no plausible facts to support a finding that he raised his concerns [about the USARC referral] with INSCOM or with the [USARC], . . . nor did he contend that the referrals themselves were somehow an attempt to delay or shield records otherwise subject to disclosure." <u>Id.</u>; <u>see also</u> <u>id.</u> (observing that Haleem "fail[ed] to note any appeal of [INSCOM's] response").  Haleem retorts that he did not need to — and, indeed, could not — "appeal a response that never c[a]me[]." Opp. at 16.

On this point, Haleem has the superior argument.  The Government seems to think that upon learning that INSCOM was referring his request in part to USARC, Haleem had to preemptively file an administrative appeal just in case USARC ghosted him down the road.  But FOIA does not demand that.  Rather, because USARC failed entirely to respond to Haleem, he is "deemed to have exhausted his administrative remedies." 5 U.S.C. § 552(a)(6)(C)(i).  The fact that USARC received Haleem's FOIA request via a referral from INSCOM — rather than receiving it directly from Haleem — does not alter that conclusion.  <u>See</u> <u>McGehee v. CIA</u>, 697 F.2d 1095, 1110 (D.C. Cir. 1983) (outlining when referrals are appropriate and underscoring that

"when an agency receives a FOIA request for 'agency records' in its possession, it must take responsibility for processing the request").

The Court therefore finds no exhaustion hurdles with respect to Plaintiff's FOIA claim regarding USARC.  Nor does it understand how letting that claim proceed "would cut off the agency's power to correct or rethink initial misjudgments or errors," as the Government posits. See Reply at 5 (quoting Oglesby, 920 F.2d at 64).  It may thus proceed.

  2. *2023 Requests*

That brings us to Plaintiff's 2023 requests.  The careful reader will remember that Haleem submitted five requests in 2023: two to DCSA, one to INSCOM, and two to DOJ.  The Government asserts that because he framed those submissions as "appeals" — by both including "appeal" in the subject lines and/or address blocks and seeking, *inter alia*, reviews of previously asserted redactions — it was not clear that he intended them to be new records requests.  See MTD at 19; Reply at 20–21; see also 2023 DCSA 2nd Request (subject line "Privacy/FOIA Appeal"; seeking review of previously asserted redactions); 2023 INSCOM Request (subject line "FOIA Request Appeal"; message referring to request as "an appeal to the FOIA request relating to" INSCOM's response to Haleem's initial request of February 2022 and seeking previously withheld pages and review of previously asserted redactions); 2023 1st FBI Request (subject line "Appeal of FOIA Determination"); 2023 2nd FBI Request (address block stating, "Freedom of Information Appeal").  The agencies hence cannot be faulted, says the Government, for interpreting Plaintiff's 2023 requests as untimely appeals of their 2022 responses, rather than new requests.  See MTD at 20–21.

Plaintiff concedes that his March 14 letter to DCSA and one of his March 14 requests to DOJ were indeed untimely appeals, see Opp. at 17, but insists that his request to INSCOM and

his other requests to DCSA and DOJ should have been treated as new ones.  Id. at 17–19.  As he

sees it, the agencies should have "err[ed] on the side of caution and either request[ed]

clarification from [him] or just treat[ed]" the requests as new requests, "[c]onsidering [his]

request[s] did not mention an assigned request number he was appealing or mention the word

'appeal' anywhere other than the subject line."  Id. at 19; see id. at 5 (referring to word "appeal"

as "typographical error" in his request).

Defendants, not Haleem, basically have it right.  The D.C. Circuit has held that "a

submission must be reasonably clear that its sender intends it to be a new request."  Corley v.

DOJ, 998 F.3d 981, 989 (D.C. Cir. 2021) (citations omitted).  Here, Plaintiff's 2023 submissions

were plainly not "reasonably clear" that Haleem intended them to be new requests.  Considering

his inclusion of the word "appeal" in the subject line and/or "to" line and, in some cases, his

request for a review of previously asserted redactions, it was entirely reasonable for agency

employees to construe the submissions as administrative appeals, not new requests.  Cf. id.

(upholding agency's decision to "treat[] [the plaintiff's] submission as what it purported to be: an

administrative appeal with relevant supporting documents attached").

There is, however, one wrinkle that the Government seems to overlook: unlike DCSA and

DOJ, which reasonably construed Haleem's 2023 submissions as untimely appeals, INSCOM in

fact treated his 2023 submission as a new request.  See Opp. at 18; see also 2023 INSCOM 1st

Response (denying request and notifying Plaintiff of his administrative-appeal window); 2023

Army Response (describing request as "a new request").  In other words, even if INSCOM was

not required to construe the request that way, it did.  Indeed, it issued him a denial, explaining

that the new request was a "duplicate" of his 2022 request and outlining his appeal rights.  See

2023 INSCOM 1st Response.  Not only that — Haleem timely appealed that denial, and the Army adjudicated his appeal.

Given all of that, the Court cannot conclude that he failed to exhaust his claim based on INSCOM's response to his 2023 request.  Haleem, nonetheless, may have an uphill climb on the merits at summary judgment since it seems that his 2023 request was in fact a duplicate of his 2022 request.  The Motion to Dismiss as to that claim will be denied.

* * *

Before moving on, the Court notes one final Government basis for dismissal: that Plaintiff's requests did not "reasonably describe" the records he was seeking, as the Privacy Act and FOIA require.  See MTD at 21–25; see also Kalu, 2015 WL 4077756, at *4 (if requester "does not comply" with requirement to submit request that "reasonably describes the records sought," but "nonetheless files suit, she is said to have failed to exhaust her administrative remedies, and she must file a perfected request before a court will compel the agency to respond") (cleaned up).  In determining whether a request reasonably describes the records sought, "[t]he linchpin inquiry is whether the agency is able to determine precisely what records are being requested." Yeager v. DEA, 678 F.2d 315, 326 (D.C. Cir. 1982) (cleaned up).  Here, the Court is not convinced that a reasonable agency would — or that any of the agencies at issue did — have any trouble determining which records Haleem was requesting.

The counts against DOJ — Counts II and IV — will thus be dismissed in their entirety, and those against DoD will be dismissed in part.  Count I may proceed only insofar as it alleges that INSCOM's denial of Haleem's 2023 request violated the Privacy Act.  Count III may proceed only to the extent that it alleges that USARC's failure to respond to Plaintiff's 2022 request (referred to it by INSCOM) or INSCOM's denial of his 2023 request violated FOIA.

16

B.  Fifth Amendment (Count V)

Next up is Plaintiff's equal-protection claim relating to DoD's preliminary decision to revoke his security clearance.  The Equal Protection Clause, which applies to the federal government via the Fifth Amendment, see Bolling v. Sharpe, 347 U.S. 497, 500 (1954) (applying Fourteenth Amendment's Equal Protection Clause to federal government through Fifth Amendment's Due Process Clause); see also Dixon v. Dist.t of Columbia, 666 F.3d 1337, 1339 (D.C. Cir. 2011), requires state actors to treat similarly situated persons alike.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  "A plaintiff may allege an equal protection violation if he or she received differential treatment by the government due to membership in a protected class, such as one based on race [or] national origin," among other arbitrary classifications.  Burrell v. Shepard, 321 F. Supp. 3d 1, 15 (D.D.C. 2018) (cleaned up).

In urging dismissal of this count, Defendants begin by arguing that it is foreclosed by Department of the Navy v. Egan, 484 U.S. 518 (1988).  See MTD at 25–28.  The Supreme Court there held that "the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch."  Egan, 484 U.S. at 527.  The D.C. Circuit has interpreted Egan to "bar judicial review of adverse employment actions based on the denial or revocation of a security clearance."  Rattigan v. Holder, 689 F.3d 764, 766 (D.C. Cir. 2012).  "The idea is that 'an outside non-expert body,' including a court, is institutionally ill suited to second-guess the agency's '[p]redictive judgment' about the security risk posed by a specific person."  Palmieri v. United States, 896 F.3d 579, 585 (D.C. Cir. 2018) (quoting Egan, 484 U.S. at 529).

Acknowledging that "security clearance revocations and denials are reserved for the individual agencies' review," Haleem nonetheless points to an "exception" for constitutional

claims.  See Compl., ¶ 2.  The Circuit has indeed "recognized an exception to Egan for some constitutional claims."  Palmieri, 896 F.3d at 585; see Garcia v. Pompeo, 2020 WL 134865, at *7 (D.D.C. Jan. 13, 2020) ("The D.C. Circuit consistently has held that valid constitutional claims are not foreclosed by Egan."); cf. Gill v. DOJ, 875 F.3d 677, 682 (D.C. Cir. 2017) (Tatel, J., concurring) (suggesting that some equal-protection challenges are not barred by Egan).  Adamant that Egan nonetheless applies, the Government offers several reasons why its holding precludes this Court's review.  See MTD at 26–28.

While the Egan issue is doubtless interesting and the parties spill much ink on it, the Court need not reach it in this case.  That is because even if Haleem's equal-protection claim is not barred by Egan, it falls for another reason: he has not alleged sufficient facts supporting it.  See MTD at 27–29 (highlighting deficiencies in claim); cf. Gill, 875 F.3d at 682 (declining to reach Egan issue where claim deficient for other reasons); Garcia, 2020 WL 134865, at *4 ("[T]he court need not decide whether Egan applies . . . because the Egan bar does not implicate the court's subject matter jurisdiction and because the court rules in favor of Defendant on the alternative ground that Plaintiff has failed to make out a prima facie case of national origin discrimination.") (internal citation omitted).

To state a claim for intentional discrimination, a plaintiff "must plead and prove that the defendant acted with discriminatory purpose."  Iqbal, 556 U.S. at 676.  "[P]urposeful discrimination requires more than intent as volition or intent as awareness of consequences.  It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group."  Id. (cleaned up).  A plaintiff must, at a minimum, allege enough facts to "nudge [his] claims" of discriminatory purpose "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570; see, e.g., Mesumbe v. Howard

University, 706 F. Supp. 2d 86, 92 (D.D.C. 2010) ("To plead intentional discrimination, plaintiff

cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to

pursue relief.  Rather, plaintiff must allege some facts that demonstrate that race was the reason

for defendant's actions.") (cleaned up), summarily aff'd, 2010 WL 4340401 (D.C. Cir. 2010);

Mekuria v. Bank of Am., 883 F. Supp. 2d 10, 14–15 (D.D.C. 2011) (same).  This Haleem has not

done.

Plaintiff vehemently urges that DoD's preliminary decision to revoke his security

clearance in 2022 was "based on his protected class(es)" in violation of the Fifth Amendment.

See Compl., ¶ 109–11.  That is so, he claims, because: (1) DoD made the decision based on

"allegations against Mr. Haleem . . . that arise from baseless claims from over 20 years ago"

made by his then-supervisor, Ferguson; and (2) Ferguson "only lodged" those allegations against

Haleem "due to his name, race, religion, and nationality" — i.e., because of discriminatory

animus.  Id., ¶ 109.  Plaintiff's theory — that DoD would not have made its preliminary

revocation decision in 2022 but for the actions that Ferguson took with discriminatory intent over

twenty years prior — is thus of the cat's paw variety.  See Cravens v. Pact, Inc., 2020 WL

956526, at *3 n.3 (D.D.C. Feb. 27, 2020) ("A cat's paw case is one in which a plaintiff seeks to

hold his or her employer liable for the animus of an employee who influenced (but did not make)

the ultimate adverse employment decision.") (citation omitted); cf. Njang v. Whitestone Grp.,

Inc., 187 F. Supp. 3d 172, 186 (D.D.C. 2016) (noting a "somewhat atypical" discrimination

claim in which plaintiff did not argue "the person who allegedly acted with discriminatory

animus . . . was the person who made the decision to revoke his clearance").

Unfortunately for Haleem, even assuming a cat's paw theory of liability is viable under

the Fifth Amendment, he does not allege adequate facts to support either, let alone both, of the

propositions necessary for his theory to hold.  To start, he does not plausibly allege that Ferguson's allegations "in turn led to his security revocation almost twenty years later."  MTD at 28.  On the contrary, he acknowledges that his "security clearance was adjudicated <u>favorably</u> twice over the span of 20 years since" Ferguson's allegations.  <u>See</u> Opp. at 29 (emphasis added).

To be sure, Plaintiff does assert that the Statement of Reasons "quotes and paraphrases almost exclusively" from the 2003 investigation for which Ferguson was a source.  <u>See</u> Compl., ¶ 55.  But he does not claim that Ferguson's allegations were a but-for cause of the revocation decision.  Nor could he: the Statement of Reasons itself offers a plethora of rationales having nothing to do with claims made by Ferguson.  <u>See generally</u> Statement of Reasons.  Some stem directly from Haleem's own answers to questions on his security-clearance form and in interviews.  <u>See, e.g.</u>, <u>id.</u> at 83–84 (noting, in section regarding concerns about foreign influences, that Haleem failed to disclose real estate that he owns in Palestine); <u>id.</u> at 84 (stating, in section regarding concerns about personal conduct, that Plaintiff refused to disclose details about settlement of lawsuit between him and former employer and was "not fully candid . . . when discussing [his] termination" from that employer); <u>id.</u> ("Overall, you have displayed less than full candor in your dealings with investigators and during the investigative process, and your actions are indicative of questionable judgment, dishonesty, or unwillingness to comply with rules and regulations, which raises questions about your reliability, trustworthiness, and ability to protect classified or sensitive information.").  Other portions of the Statement of Reasons explicitly note that <u>multiple</u> sources — <i>i.e.</i>, not just Ferguson — raised concerns.  <u>See, e.g.</u>, <u>id.</u> at 86 (indicating that at least three sources were interviewed regarding an allegation that Haleem "improperly stored a classified laptop in [his] quarters").

Even if the revocation decision was substantially based on Ferguson's allegations, moreover, Haleem falls short with respect to his claim that Ferguson acted because of discriminatory animus.  To try to show such animus, Haleem initially alleges that Ferguson was "a Caucasian male who . . . identified as Christian, of European descent, and U.S. national origin" and knew that Plaintiff was a "Palestinian individual of Arab descent who practices Islam."  Compl., ¶¶ 107 & n.2, 111, 117.  Neither Ferguson's knowledge of Haleem's race, religion, and national origin nor a mere difference in these characteristics between the men, however, is enough to support an inference of intentional discrimination.  See Tyes-Williams v. Garland, 2021 WL 4262631, at *4 (D.D.C. Sept. 20, 2021) ("[O]f course, a decisionmaker's knowledge of an applicant's race does not suggest . . . that he discriminated against the applicant."); Morris v. Jackson, 15 F. Supp. 3d 94, 106 (D.D.C. 2014), aff'd in part, rev'd in part sub nom. Morris v. McCarthy, 825 F.3d 658 (D.C. Cir. 2016) ("A mere difference in race between supervisors and an employee, without more, cannot support an inference of intentional discrimination.").

Haleem next alleges that Ferguson "was, to put it lightly, a toxic leader" who "created and/or fostered a toxic, hostile, and discriminatory environment that perpetuated the poor treatment of Mr. Haleem based on his race, national origin, and religion."  Compl., ¶¶ 114, 116.  Indeed, Haleem says, Ferguson was "the subject of harassment, impropriety, and equal opportunity complaints," including "numerous" complaints filed by Haleem for, inter alia, "racism."  Id., ¶¶ 112, 114.  Those allegations, however, are too conclusory to help Haleem's cause.  See Mekuria, 883 F. Supp. 2d at 15 (concluding that similar allegations were "nothing more than legal conclusions devoid of any factual support" and thus did "not meet the pleading standard required under Iqbal and Twombly").

Plaintiff finally claims that Ferguson "admitted in an investigation that he 'refused to read [Haleem] in on [a particular] mission because he . . . had listed several relatives and friends living in Palestine on his security questionnaire.'"  Id., ¶ 115.  That claim comes closer to providing the kind of factual support necessary for an inference of discriminatory animus.  Cf. Mekuria, 883 F. Supp. 2d at 15.  But it too is inadequate.  Having relatives and friends living in a particular country is not a protected trait and, in the unique context of a military mission involving classified information, may well be a legitimate reason to decline to read someone in — such that Ferguson's statement does not support an inference of discriminatory motive.

In sum, because Haleem has not adequately alleged that DoD made its preliminary revocation decision based on Ferguson's allegations nor that Ferguson made those allegations because of discriminatory animus, he has not stated a claim under the Fifth Amendment.

Not keen to accept that outcome, Haleem's Opposition offers a deluge of new factual allegations purporting to show that he "has been targeted" not just by Ferguson but by DoD generally "for being of Middle-Eastern descent" since he joined the U.S. Marine Corps in 1981. See Opp. at 25–30; see, e.g., id. at 25 (asserting that component of DoD "began investigating him for selling Persian rugs — not for failing to report the sales on his income tax returns or anything that would be racially neutral and non-racist"); id. at 29 (claiming that when Haleem "took offense to the use of slang terms against Iraqis," an investigator "annotate[d] [that] as if that demonstrates a foreign allegiance and not an American Soldier standing up for the freedom of all humans regardless of their race, ethnicity, religious preference, etc.").  But "it is well settled law that a plaintiff cannot amend its complaint by the briefs in opposition to a motion to dismiss."  Kingman Park Civic Ass'n v. Gray, 27 F. Supp. 3d 142, 165 n.10 (D.D.C. 2014); see

also Middlebrooks v. Godwin Corp., 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010).  The Court will

not consequently consider these extra-Complaint allegations.

As a last resort, Plaintiff posits that he can show "not only that he was treated differently

based on his race, national origin, and religion," but that DoD had "a policy or practice of

treating individuals of his race, national origin, and religion differently based on those protected

reasons alone."  Opp. at 25.  Yet, as the Government correctly observes, "the paragraphs of the

Complaint that Haleem cites in support of this assertion . . . do not demonstrate" anything of the

sort.  See Reply at 12–13 (citing Compl., ¶¶ 105–22).  The only allegation that could even

plausibly support a policy-or-practice claim is that "[t]he Defendants cannot demonstrate that

their policies and practices which have discriminated against Mr. Haleem and stripped him of his

military career further a compelling governmental interest."  Compl., ¶ 119.  But the mere

invocation of the words "policy" and "practice" in that conclusory fashion is inadequate.

The Court will thus dismiss Haleem's equal-protection claim because at the end of the

day, even if Egan does not preclude it, it is deficient on its face.  As a result, the Court has no

cause to address the Government's argument that, because the United States has not waived

sovereign immunity under the APA or the Constitution for monetary damages, Plaintiff's request

for $1,500,000 in damages must be dismissed.  See MTD at 31–33; Compl., ¶¶ 142–57 (seeking

declaratory and injunctive relief as to all counts but damages only as to Count V).

C.   Administrative Procedure Act

That leaves Haleem's APA claims, which the Court evaluates seriatim.

1.   Violation of SEAD 4 (Count VI)

Plaintiff first alleges that DoD's actions were "arbitrary, capricious, an abuse of

discretion, and otherwise not in accordance with law" under the APA, 5 U.S.C. § 706(2)(A),

insofar as they violated Security Executive Agent Directive 4.  See Compl., ¶ 129; see also id.,
¶¶ 123–31.  SEAD 4 is the Executive Branch's most recent directive establishing the
adjudicative criteria for security-clearance eligibility throughout the federal government.  Id.,
¶ 124.  It sets forth thirteen adjudicative guidelines and, for each, lists conditions that could raise
or mitigate security-clearance concerns.  Id.

It is less than clear how Haleem thinks DoD violated SEAD 4.  He alleges that the
preliminary decision to revoke his clearance "was based upon" three guidelines in SEAD 4: "(1)
Guideline 'B', Foreign Influence; (2) Guideline 'E', Personal Conduct; and (3) Guideline 'H',
Handling of Classified Information."  Id., ¶ 125.  But, as the Government points out, Haleem
offers nothing in his Complaint indicating how the decision "violated" those guidelines — or any
other part of SEAD 4.  See MTD at 30–31.  His Opposition clarifies that his claim is a
"challenge [to] the clearance revocation on the merits," based on the fact that "SEAD 4 simply
does not allow any executive agency to consider race, national origin, or religion to play a factor
in revoking a security clearance; these three protected classes do not seem to be mentioned
within the adjudicative guidelines listed within SEAD 4."  Opp. at 33.  Framed that way, it
sounds like a repackaged version of his equal-protection claim.

The exact contours of this challenge turn out not to matter, however, because the Court is
required to dismiss it for a very simple reason: Haleem lacks a cause of action.  See Unsuck DC
Metro v. Washington Metro. Area Transit Auth., 2022 WL 683403, at *2 (D.C. Cir. Feb. 11,
2022) (defendants cannot "waive" cause of action "into existence").  His claim arises under the
APA, which supplies a cause of action only when there is "final agency action."  Trudeau v. Fed.
Trade Comm'n, 456 F.3d 178, 183–85 (D.C. Cir. 2006); see also Ramirez v. U.S. Immigr. &
Customs Enf't, 310 F. Supp. 3d 7, 22 (D.D.C. 2018) ("Where there is no final agency action, a

plaintiff has no cause of action under the APA.").  It is well established that to be "final," an agency action must both "mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined or from which legal consequences will flow."  U.S. Army Corps of Eng'rs v. Hawkes Co., 578 U.S. 590, 597 (2016) (quoting Bennett v. Spear, 520 U.S. 154, 177–78 (1997)).

Here, Haleem acknowledges that DoD's preliminary decision to revoke his security clearance — the action he seeks to challenge "on the merits," Opp. at 33 — is exactly that: a "preliminary decision."  Opp. at 36; see Instructions for Responding to a Statement of Reasons at 2 (twice referring to the "preliminary decision").  A "preliminary decision," by definition, is one "of a merely tentative or interlocutory nature" and thus does not "mark the consummation of [an] agency's decisionmaking process."  U.S. Army Corps of Eng'rs, 578 U.S. at 597 (quoting Bennett, 520 U.S. at 177–78).  Nowhere does Haleem claim that, since issuing its "preliminary decision" to revoke his clearance, DoD has made a final decision to that effect.  On the contrary, he seals his fate by conceding that he has not yet received a final decision.  See Opp. at 35–36 ("Admittedly, [a Statement of Reasons] is a 'preliminary decision,' and that is where [his] clearance process is at and has been stuck at for 18 months.") (emphasis added).

As such, even assuming that the APA is an appropriate vehicle to seek judicial review of an alleged violation of SEAD 4, Count VI must be dismissed because Plaintiff does not challenge a final agency action.  As a result, the Court need not address the Government's reasonable position that even if DoD had made a final decision to revoke Haleem's clearance, such decision would be "committed to agency discretion by law" and thus unreviewable under the APA.  See MTD at 30 (quoting Oryszak v. Sullivan, 576 F.3d 522, 524 (D.C. Cir. 2009)).

2.  *Violation of Executive Order and DoD Manual Provisions (Count VII)*

Plaintiff's last count does not "challenge the clearance suspension and revocation on the merits," Opp. at 33, but instead alleges that DoD's failure to provide the records he requested violated three policies: (1) Executive Order 12,968, 60 Fed. Reg. 40,245 (1995); (2) DoD's security-clearance procedures as set forth in the DoD Manual 5200.02; and (3) DoD's procedures as set forth in the DoD Directive 5220.06.  See Compl., ¶¶ 132–41.

Executive Order 12,968 provides in section 5.2(a)(2):

> Applicants and employees who are determined to not meet the standards for access to classified information . . . shall be . . . provided within 30 days, upon request and to the extent the documents would be provided if requested under the Freedom of Information Act (5 U.S.C. 552) or the Privacy Act (3 U.S.C. 552a), as applicable, any documents, records, and reports upon which a denial or revocation is based.

60 Fed. Reg. at 40,252; see Compl., ¶ 25 (quoting this section).  DoD Manual 5200.02 reiterates that "[n]o unfavorable national security eligibility determination will be made without first . . . [i]nforming the individual of their right to," *inter alia*, "[r]equest the documents, records, and reports upon which the unfavorable national security determination was made" and "b[e] granted an extension to the set timeline . . . if requested documents, records, and reports are not provided promptly."  DoDM 5200.02 ¶ 10.2; see Compl., ¶¶ 28–30.  And DoD Directive 5220.06 confirms that "a final unfavorable clearance decision shall not be made without first providing the applicant with . . . [n]otice of specific reasons for the proposed action" and "[a]n opportunity to respond to the reasons."  DoDD 5220.06, § 4.3.1–.2.

Haleem posits that those policies imposed on DoD an "obligation[] . . . to provide" him "all materials relied upon in [its] decision to revoke [his] security clearance" before the "due date for [his] response/rebuttal" to the Statement of Reasons.  See Compl., ¶¶ 135, 137.  By declining to do so, he says, DoD deprived him of the "protections and rights" that should have been

"afforded to [him] prior to revoking his clearance."  Opp. at 33; see id. (explaining that "Count

VII is essentially a due process challenge").  DoD's actions were, accordingly, "arbitrary,

capricious, an abuse of discretion, and otherwise not in accordance with law" under the APA, 5

U.S.C. § 706(2)(A).  See Compl., ¶ 139.

Defendants offer the Court ample grounds on which to dismiss this count.  They initially

submit that, insofar as Haleem is trying to challenge DoD's responses — or lack thereof — to his

records requests, he lacks a cause of action under the APA because the Privacy Act and FOIA

provide adequate remedies.  See MTD at 31.  The Court agrees.

To state a valid APA claim, a plaintiff must, inter alia, allege that "there is no other

adequate remedy in a court."  5 U.S.C. § 704.  This limitation "makes it clear that Congress did

not intend the general grant of review in the APA to duplicate existing procedures for review of

agency action."  Bowen v. Massachusetts, 487 U.S. 879, 903 (1988).  To be an "adequate remedy

in a court" under section 704, the "alternative remedy need not provide relief identical to relief

under the APA, so long as it offers relief of the same genre."  Garcia v. Vilsack, 563 F.3d 519,

522 (D.C. Cir. 2009) (cleaned up).  Courts must nevertheless avoid applying Section 704 in a

way that defeats "the [APA's] central purpose of providing a broad spectrum of judicial review of

agency action."  Bowen, 487 U.S. at 903.

Applying that standard, the D.C. Circuit has concluded under a variety of circumstances

that "FOIA offers an 'adequate remedy' within the meaning of [the APA]."  Elec. Priv. Info. Ctr.

v. IRS, 910 F.3d 1232, 1244 (D.C. Cir. 2018) (quoting Citizens for Resp. & Ethics in Wash. v.

DOJ, 846 F.3d 1235, 1246 (D.C. Cir. 2017)).  District courts — including this one — have had

no trouble reaching the same conclusion as to the Privacy Act.  See, e.g., Wilson v. McHugh, 842

F. Supp. 2d 310, 320 (D.D.C. 2012) ("[B]ecause the APA provides review of final agency action

only where there is no other adequate remedy, . . . a plaintiff cannot bring an independent APA claim predicated on a Privacy Act violation.") (cleaned up); Harrison v. Fed. Bureau of Prisons, 248 F. Supp. 3d 172, 182 (D.D.C. 2017) (same) (collecting cases).

That consensus conclusion is an eminently logical one: the Privacy Act and FOIA provide for review of an agency's allegedly unlawful conduct that is no different from district-court review in an APA case. Cf. El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Hum. Servs., 396 F.3d 1265, 1270 (D.C. Cir. 2005) ("Congress did not intend to permit a litigant challenging [agency action] . . . to utilize simultaneously both [an alternative remedy] and the APA.") (citation omitted). Indeed, those alternatives offer plaintiffs like Haleem the same exact forum as an APA action — viz., a federal district court.

To be sure, the relief that Plaintiff seeks here — i.e., a declaration that DoD violated Executive Order 12,968, DoD Manual 5200.02, and DoD Directive 5220.06, and an order prohibiting it from doing so, see Compl., ¶¶ 155–56 — is not your average relief in a Privacy Act or FOIA action. That said, courts have "wide latitude . . . to fashion remedies under FOIA, including the power to issue prospective injunctive relief." Citizens for Resp. & Ethics in Wash., 846 F.3d at 1242; see Payne Enters., Inc. v. United States, 837 F.2d 486, 494 (D.C. Cir. 1988) ("FOIA imposes no limits on courts' equitable powers in enforcing its terms."); see also Balderrama v. U.S. Dep't of Health & Hum. Servs., 2006 WL 889778, at *11 (D.D.C. Mar. 30, 2006) ("The Privacy Act's subsection on civil remedies authorizes courts to enter injunctive relief . . . ."). Were this Court to order DoD to respond to records requests that Haleem thinks have gone unanswered and produce records that he thinks have been wrongly withheld, there would be no "yawning gap between the relief" that the Privacy Act and FOIA "afford[] and the relief [Haleem] seeks under the APA." Citizens for Resp. & Ethics in Wash., 846 F.3d at 1246.

The Privacy Act and FOIA thus provide adequate remedies to compel responses to his requests and the production of withheld records, meaning Plaintiff cannot premise an APA claim on Defendants' alleged failure to respond to such requests or produce such records.

Not so fast, says Haleem, at least in regard to the Executive Order.  The Privacy Act and FOIA establish only "a deadline by which an agency must respond to . . . requests," but not "for when the agency must produce responsive records."  Opp. at 35.  In contrast, Executive Order 12,968 "gives agencies exactly thirty days to provide the relevant documents" and provides that "[a]n agency cannot process a clearance appeal until it has done so."  Id.  Ergo, Plaintiff says, the Privacy Act and FOIA, with their "open-ended timeframe[s]," are not adequate alternatives to the Executive Order's "specific provision explicitly written to ensure due process rights."  Id.

In insisting that he can maintain an APA claim premised on violations of Executive Order 12,968, Plaintiff seems to brush aside an inconvenient fact about that Executive Order: it specifically states that it "is intended only to improve the internal management of the executive branch and . . . does not[] create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person." 60 Fed. Reg. at 40254; see Reply at 17.

Courts have read such language in an Executive Order — including this one — to bar judicial review of agency compliance with it.  See Romero v. Dep't of Def., 527 F.3d 1324, 1330 n.1 (Fed. Cir. 2008) (addressing this Executive Order); Sur Contra La Contaminacion v. EPA, 202 F.3d 443, 449 (1st Cir. 2000); Air Transp. Ass'n of Am. v. FAA, 169 F.3d 1, 8 (D.C. Cir. 1999); see also Moyar v. Dep't of Def., 2023 WL 2662915, at *3 (D.D.C. Mar. 28, 2023) (there are "good reasons" to think that APA is not "an appropriate vehicle to seek judicial review over

alleged violations of Executive Order 12,968"); cf. Meyer v. Bush, 981 F.2d 1288, 1296 n.8

(D.C. Cir. 1993) ("An Executive Order devoted solely to the internal management of the

executive branch — and one which does not create any private rights — is not . . . subject to

judicial review."); Defs. of Wildlife v. Jackson, 791 F. Supp. 2d 96, 121 (D.D.C. 2011)

("Plaintiffs cannot use the review provisions of the APA to enforce an Executive Order that is not

subject to judicial review . . . ."). Haleem never grapples at all with that language. As a result,

he cannot sustain an APA claim.

What is more, even setting the availability of a cause of action aside, any claim under the

Executive Order would seem to come up short for the additional reason that it does not require

DoD to produce documentation until a final security-clearance determination is made. See

Moyar, 2023 WL 2662915, at *3–6 (granting motion to dismiss in analogous security-clearance

case because, even if APA is adequate vehicle, plaintiff who received only preliminary

revocation decision "failed to allege he is entitled to any documents or documentation requests

'upon which a denial or revocation is based' under Executive Order 12,968," meaning DoD

"could not have acted contrary to law in declining to provide [him] with such documentation")

(citation omitted). For several reasons, then, this count will face the same fate as most of those

before it: dismissal.

## IV.    Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendants'

Motion to Dismiss. A separate Order consistent with this Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  January 22, 2024