## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEEN HALEEM,<br><br>     Plaintiff,<br><br>       v.<br><br>U.S. DEPARTMENT OF DEFENSE, *et al.*,<br><br>     Defendants. | Civil Action No. 23-1471 (JEB) |

## MEMORANDUM OPINION

Following a preliminary decision to revoke his security clearance, Plaintiff Deen Haleem, a Palestinian Muslim of Arab descent who works in military intelligence, sued Defendants Department of Defense, Department of Justice, and various subagencies alleging violations of the Privacy Act, the Freedom of Information Act, and the Fifth Amendment's guarantee of equal protection. Defendants responded with a motion to dismiss, which the Court granted in part and denied in part: all counts were dismissed excepting two FOIA claims and one Privacy Act claim. Plaintiff now seeks to revivify his Fifth Amendment count against DoD through a Motion to Amend his Complaint. In response, DoD argues that the Court should deny the Motion because Haleem's proposed amendments are futile. The Court agrees.

## I.    Background

The following overview covers only what is material to the current Motion, beginning with its procedural posture and then the relevant facts. In doing so, the Court borrows from its prior Opinion in this case, Haleem v. U.S. Dep't of Def. (Haleem II), 2024 WL 230289 (D.D.C. Jan. 22, 2024).

A.      Procedural Background

Haleem originally filed suit in federal court in October 2022 under the Privacy Act and FOIA, but voluntarily dismissed the action after the Government moved to dismiss for failure to exhaust administrative remedies.  See Haleem v. U.S. Dep't of Def. (Haleem I), No. 22-3021 (D.D.C.), ECF Nos. 1 (Compl.); 13 (Haleem I MTD); 17 (Haleem I Notice of Dismissal).  After sending requests for documents to the Government and receiving unsatisfactory responses, he brought the current action in May 2023 against DoD, DOJ, and subagencies alleging violations of the Privacy Act, FOIA, and the Fifth Amendment's guarantee of equal protection.  See ECF No. 1 (Compl.).  Defendants responded with a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  See ECF No. 11 (MTD).

In his opposition to that motion, Haleem introduced new factual allegations to buttress his Fifth Amendment claim that the agencies had discriminated against him based on race, national origin, and religion.  See ECF No. 14 (MTD Opp.) at 25–30.  As a plaintiff cannot amend his complaint through an opposition, the Court disregarded those new factual allegations.  Haleem II, 2024 WL 230389, at *11.  It ultimately granted in part and denied in part the Government's motion; as relevant here, the Fifth Amendment claim was dismissed without prejudice for failure to state a claim.  Id. at *8–11.

Hoping for another bite at that apple, Haleem now seeks to amend his Complaint solely as to the Fifth Amendment count.  See ECF No. 19 (Mot. to Amend).  He proposes to add those same factual allegations that were raised — but ignored — in his prior opposition.  Compare Opp. at 25–30, with ECF No. 19-1, Exh. C (First Amend. Compl.), ¶¶ 108–13, 123–32.  Defendants oppose the Motion and argue that the amendments are futile.  In rejoinder, Haleem argues . . . well, nothing.  He did not file a Reply to the Government's Opposition.  While this is

not necessarily dispositive under our Local Rules, see Local Rule 7(d), it does not aid his cause.
See, e.g., Cannon v. Wells Fargo Bank, N.A., 952 F. Supp. 2d 1, 11 (D.D.C. 2013) (dismissing
claim as futile where defendant argued futility in opposition and plaintiff neglected to reply).

      B.    Factual Background

     With that posture in mind, the Court now turns to the facts that are relevant to Plaintiff's
Fifth Amendment equal-protection claim, which is the subject of the instant Motion to Amend.

     In his original Complaint, Haleem alleged equal-protection violations based on his status
as a Palestinian, a Muslim, and an Arab. See Compl., ¶¶ 107–08. The Court discerned that he
had made out two theories: first, that DoD discriminated against him because its preliminary
clearance-revocation decision was influenced by the discriminatory animus of one of its
employees — otherwise known as a "cat's paw" theory of discrimination. Id., ¶¶ 107–17.
Second, he asserted that DoD had adopted "policies or practices" of discrimination. Id., ¶¶ 119–
20.

     The purported basis for the "cat's paw" theory was that: (1) DoD based its decision on
"allegations against Mr. Haleem [] that [arose] from baseless claims from over 20 years ago"
made by his then-supervisor, Captain George T. Ferguson IV; and (2) Ferguson "only lodged"
those allegations against Haleem "due to this name, race, religion, and nationality" — i.e.,
because of discriminatory animus. Id., ¶ 109. The Court was unpersuaded by this theory
because the facts pled failed to establish either (1) that the 20-year-old allegations were the cause
of the clearance revocation, or (2) that Ferguson acted because of discriminatory animus.
Haleem II, 2024 WL 230289, at *8–11. As to the second theory, although Plaintiff perfunctorily
included the phrase "policies or practices" in his Complaint, see Compl., ¶¶ 119–20, it was
conclusory because it lacked any factual support. Haleem II, 2024 WL 230289, at *11. The

Court consequently dismissed Haleem's Fifth Amendment claim because, under either of the

above theories, it was deficient on its face.  Id.

Plaintiff now seeks to resurrect this count with a slew of additional factual allegations, to

wit:

- the Naval Criminal Investigative Service (NCIS) investigated him in 1992 for the illegal importation of Middle Eastern rugs from Iraq, see First Amend. Compl., ¶ 109; ECF No. 14-1, Exh. I (NCIS Report) at 49;
- he was investigated for serving as a counterintelligence agent without completing the requisite coursework while deployed to Iraq in 2003, but others similarly situated to him were not investigated, see First Amend. Compl., ¶¶ 110–13;
- he was, during the same deployment, subjected to false allegations related to work performance that were intended to harass him based on his protected classes, id., ¶ 123 (enumerating eight "false allegations");
- he invoked his right to counsel during a 2004 investigation and his right to remain silent during a 2006 investigation, behavior that was characterized as a "foreign influence" concern on the Statement of Reasons for his revocation, id., ¶¶ 124–25;
- an investigator "from one of the early investigations" reported that Plaintiff took offense at pejorative terms used against Iraqis, "which the investigator appeared to conclude supported Mr. Haleem's allegiance to foreign nationals over American interests," id., ¶ 126;
- a 2008 Report of Investigation (ROI) made repeated mentions of Plaintiff's ethnic and racial background, id., ¶ 127;
- the same 2008 ROI stated that Plaintiff conducted interrogations in Arabic without providing interpretation for the assigned interrogators, and also possessed two notebooks "containing what appeared to be Arabic writing," id., ¶ 128;
- the 2022 report that formed the basis of Plaintiff's revocation "persistently" referenced his race and national origin, id., ¶ 129;
- anti-Islamic sentiment was at an "all-time high in the United States, including within the military," after the terrorist attacks on September 11, 2001, id., ¶ 131; and
- DoD condones a pattern and practice of discrimination.  Id., ¶ 132 & n.3.

The Court's analysis presumes the facts in the First Amended Complaint to be true and

drawing all inferences in favor of Plaintiff.  Arora v. Buckhead Fam. Dentistry, Inc., 263 F. Supp.

3d 121, 125 (D.D.C. 2017).

## II.      Legal Standard

A plaintiff may amend her complaint once as a matter of course within 21 days of serving it or within 21 days of the filing of a responsive pleading.  See Fed. R. Civ. P. 15(a)(1). Otherwise, she must seek consent from the defendant or leave from the court.  The latter "should [be] freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In deciding whether to grant leave to file an amended complaint, courts may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  Foman v. Davis, 371 U.S. 178, 182 (1962).  In this Circuit, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason."  Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Furthermore, under Rule 15, "the non-movant generally carries the burden in persuading the court to deny leave to amend."  Nwachukwu v. Karl, 222 F.R.D. 208, 211 (D.D.C. 2004).

It is clear, however, that amendment should not be permitted if it would be futile.  In other words, if the amendment is facially infirm, courts need not grant leave.  See In Re Interbank Funding Corp. Secs. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss.") (citing Foman, 371 U.S. at 182, for proposition that "'futility of amendment' is permissible justification for denying Rule 15(a) motion"); James Madison Ltd. v. Ludwig, 82 F 3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss").

## III.      Analysis

As DoD does not consent to Haleem's Motion, <u>see</u> ECF No. 20 (Response to MTA), he must seek the Court's leave to amend.  In its Opposition, Defendant argues that Plaintiff's amendments are futile because he still fails to state a claim for intentional discrimination or, alternatively, that his claim is barred by <u>Department of Navy v. Egan</u>, 484 U.S. 518 (1988), which holds that individual decisions regarding security clearances are not subject to judicial review.  <u>See</u> ECF No. 21 (Opp.) at 4, 8.  Although the Circuit has "recognized an exception to <u>Egan</u> for some constitutional claims" unlike the one at issue here, <u>Palmieri v. United States</u>, 896 F.3d 579, 585 (D.C. Cir. 2018), the Court need not reach the issue posed by <u>Egan</u> at this juncture because it agrees that the amendments are facially deficient.

The following analysis should sound familiar to Haleem because it largely tracks the Court's earlier Opinion.  <u>See</u> <u>Haleem II</u>, 2024 WL 230289, at *8–11.  The Equal Protection Clause applies to the federal government through the Fifth Amendment, <u>see</u> <u>Bolling v. Sharpe</u>, 347 U.S. 497, 500 (1954), and requires state actors to treat similarly situated persons alike.  <u>See</u> <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  Where invidious discrimination is alleged, "the plaintiff must plead and prove that the defendant acted with discriminatory purpose."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009) (citing <u>Washington v. Davis</u>, 426 U.S. 229 (1976), for proposition that Fifth Amendment implies constitutional equal-protection cause of action against federal officials).  "[A]n unadorned, the defendant-unlawfully-harmed-me accusation . . . . that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  <u>Id.</u> at 687 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  Facts that are "merely consistent with" a defendant's liability "stop[] short of the line between possibility and plausibility of 'entitlement to relief.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).

It is still unclear, even considering the proposed amendments, what theory of equal protection Haleem is advancing here — *e.g.*, selective enforcement, pattern or practice, or something new entirely.  But under any classification, he has returned to the Court armed only with conclusory allegations and facts that do not get him far.  Although the Court must accept the facts alleged as true, it "need not accept as true a legal conclusion couched as a factual allegation, nor an inference unsupported by the facts set forth in the complaint."  Frederick Douglass Found., Inc. v. District of Columbia, 2021 WL 3912119, at *3 (D.D.C. Sept 1, 2021) (quoting Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006)), aff'd in part, 82 F.4th 1122 (D.C. Cir. 2023).

Plaintiff starts in the right direction when he alleges that he was investigated for misconduct in Iraq in 2003 while "others similarly situated to him were not."  First Amend. Compl., ¶¶ 110–13.  Well-pled details about comparators in similarly situated circumstances are the sort of facts that can nudge a claim "across the line from conceivable to plausible."  Iqbal, 556 U.S. at 680 (quoting Twombly, 550 U.S. at 570); see also, e.g., Brady v. Off. of Sergeant at Arms, 520 F.3d 490, 495 (D.C. Cir. 2008) ("Often, the employee attempts to produce evidence suggesting that the employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances.").  The trouble for Plaintiff, however, is twofold: (1) he never adds any information about any comparator, leaving the Court to guess; and (2) even if such comparator existed, the necessary causal link between that 2003 investigation and — almost two decades later — the 2022 revocation decision is undermined by Haleem's acknowledgement that his clearance was positively adjudicated twice in the intervening years.  See Opp. at 29; Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 589 U.S. 327, 329 (2020) (assessing pleading requirements in antidiscrimination suits and

noting, "Few legal principles are better established than the rule requiring a plaintiff to establish causation."); see also Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (holding there could be no inference of causal link via temporal proximity where employer's adverse action occurred twenty months after it became aware of employee's protected activity).

His other allegations are similarly unavailing. Haleem does not support his legal assertions with subsidiary facts that would lead to an inference that DoD is liable for the misconduct alleged. See Section I.B, *supra*; Iqbal, 556 U.S. at 678. Take, for example, the allegation that DoD "persistently referenced his race and national origin" in the 2022 revocation report. See First Amend. Compl., ¶ 129. Leaving aside the fact that several of the examples he points out do not refer to Plaintiff's race or national origin, see id., it simply does not follow that DoD "violate[d] Mr. Haleem's fundamental rights" to equal protection simply because an investigator mentioned his race or national origin without any derogatory implication in a report of investigation. Id., ¶¶ 129–30. This is also true in regard to such references in the 2008 ROI. Id., ¶ 127. It is likewise a *non sequitur* to assert that because DoD listed Haleem's lack of cooperation — during an investigation into his foreign influences — as a "foreign influence[] concern," it "thereby explicitly discriminated against him on the basis of his Palestinian heritage." Id., ¶ 125.

Continuing apace, Plaintiff provides no connection at all between DoD's recent revocation decision and a 1992 investigation into Haleem's then-side hustle of importing Middle Eastern rugs. See First Amend. Compl, ¶ 109; NCIS Report at 49. In addition, insofar as Plaintiff attempts to stitch this and other extraneous facts together to illustrate a "policy or practice" of discrimination, the Court is unpersuaded. See First Amend. Compl., ¶ 131 (alleging public's general anti-Islamic sentiment after Sept. 11, 2001); id., ¶ 132 (alleging general DoD

condoning of discrimination).  This is particularly true where no other victims of this purported policy or practice are identified.

Although the proposed amendments seem aimed at curing the Court's previous admonishment that "mere invocation of the words 'policy' and 'practice' in . . . conclusory fashion is inadequate" to state a claim, Haleem II, 2024 WL 230289, at *11, there is no ameliorative effect where the additional factual allegations themselves are also conclusory. Indeed, Haleem's allegations resemble those that were dismissed in Iqbal, 556 U.S. at 680–81, as "bare assertions" that the defendant had acted because of the plaintiff's membership in a protected class.  Compare id. ("Respondent pleads that petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin . . . .'"), with, e.g., First Amend. Compl., ¶ 123 ("[Plaintiff was subject to] allegations that were false, and upon information and belief, known to be false at the time they were made, for the sole purpose to harass [Plaintiff] due to [his] protected classes . . . .").

Suffice it to say that the Court finds all of Haleem's proposed amendments to be the sort of "naked assertions devoid of further factual enhancement" that are insufficient to survive a motion to dismiss under the plausible-pleading standard set out in Iqbal and Twombly.  See Iqbal, 556 U.S. at 678 (cleaned up).  The Court therefore does not grant leave to amend the Complaint.  It also notes without deciding that even with better facts, Haleem would likely face stiff headwinds sailing into Egan's waters.  See, e.g., Palmieri, 896 F.3d at 584–85 (holding plaintiff's constitutional challenge to revocation barred by Egan).

**IV.     Conclusion**

For these reasons, the Court will deny Plaintiff's Motion to Amend.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  March 29, 2024