**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

DEEN HALEEM,

    Plaintiff,

       v.                          Civil Action No. 23-1471 (JEB)

UNITED STATES DEPARTMENT OF
DEFENSE, *et al.*,

    Defendants.

---

**MEMORANDUM OPINION**

Plaintiff Deen Haleem is a Master Sergeant in the U.S. Army Reserves whose position requires him to hold a Top Secret security clearance. In the wake of the Government's revocation of his clearance for national-security concerns, he submitted a Privacy Act and Freedom of Information Act request in 2022 to the Army Intelligence and Security Command (INSCOM) — a component of the Department of Defense — for documents that the Government relied upon in its revocation decision. After receiving heavily redacted documents and learning that many others were withheld, Haleem filed a duplicate request with the agency a year later for the redacted information and withheld documents, which was denied. He then commenced this Privacy Act and FOIA suit against DOD and the Department of Justice in May 2023. After the Court narrowed the case in response to Defendants' Motion to Dismiss, both sides now move for summary judgment on what survived. As the Government's withholdings

are mostly justified and certain of Haleem's claims are moot, but there are several non-exempt

pages that can be released, the Court will grant in part and deny in part both Motions.

## I.    Background

The following facts are undisputed.  In February 2022, DOD made a preliminary decision

to revoke Plaintiff's security clearance, citing "concerns about Haleem's foreign influences,

personal conduct, and handling of classified information."  ECF Nos. 30-2 (Pl. Resp. to

Statement of Undisputed Material Facts), ¶¶ 1–2; 1 (Compl.), ¶¶ 43, 125.  Plaintiff was informed

that he could appeal that decision by submitting a written response with supporting

documentation to the agency.  See ECF No. 1-1 at ECF p. 2–3 (Instructions for Responding to

Statement of Reasons).

Shortly after, Plaintiff instead submitted a Privacy Act and FOIA request to INSCOM for

records relating to DOD's decision to revoke his security clearance.  See ECF No. 29-2 (Michael

T. Heaton Decl.), ¶ 3; Pl. Resp. to SUMF, ¶ 5.  INSCOM, in response, released 432 pages to

Plaintiff, withheld 113 pages pursuant to Privacy Act Exemption (k)(2) and FOIA Exemption

7(E), and referred 33 pages to the Army Reserve Command (USARC) for further review.  See

Heaton Decl., ¶¶ 11–12, 16; ECF No. 29-3 (INSCOM Vaughn Index) at 19.  It also informed

Haleem of his right to appeal its records decisions within the agency, which he did not do.  See

Heaton Decl., ¶ 12; Pl. Resp. to SUMF, ¶ 15.

A little over one year after filing his first request, Haleem submitted another — styled as

an appeal — to INSCOM seeking "[t]he 113 pages that have been withheld" and "a review of the

redactions asserted by INSCOM."  Heaton Decl., ¶ 16 (alteration in original).  INSCOM

classified this demand as "a duplicate request" and denied it.  Id., ¶ 18; Pl. Resp. to SUMF, ¶ 21.

Several days later, Plaintiff appealed through a letter reiterating his request for the 113 pages,

which was again denied.  See Heaton Decl., ¶ 19; ECF No. 14-1 at ECF p. 26 (Ltr. from Assoc. Deputy General Counsel to Pl., Sept. 28, 2023).

Dissatisfied with the Government's actions, Haleem filed this suit against DOJ and DOD in May 2023 to recover the withheld 113 pages and force USARC to move more quickly.  See Compl., ¶¶ 78–141.  Both Departments moved to dismiss, and the Court dismissed Justice entirely as well as all claims against DOD, except Plaintiff's allegation that INSCOM's denial of his 2023 request violated the Privacy Act and FOIA and that USARC's failure to respond to his referred 2022 request violated FOIA.  See ECF No. 17 (Jan. 22, 2024, Order).  Both parties now move for summary judgment on the remaining issues.  While evaluating those Motions, on October 16, the Court ordered the Government to submit the withheld documents for *in camera* review.  See Oct. 16, 2024, Minute Order.  The Court has now reviewed those materials.

After this suit was filed, INSCOM — still processing part of Haleem's 2022 request over a year and a half later — informed him on August 10, 2023, that USARC had returned the 33 pages referred to it without action.  See Heaton Decl., ¶ 21.  INSCOM then forwarded the pages to Central Command for review instead.  Id.  Central Command subsequently withheld eight pages and gave the other 25 back to INSCOM for review.  See ECF No. 29 (Def. MSJ) at 39–40. INSCOM partially released the pages to Plaintiff nine months later.  See Heaton Decl., ¶¶ 22–23. The 33 pages are considered as part of the Court's analysis below.

## II.    Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it can affect the

substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. U.S. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine

4

the matter de novo.'"  DOJ v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989)

(quoting 5 U.S.C. § 552(a)(4)(B)).  Summary judgment is only proper when the court is assured

that the record justifies the result.  See Ctr. For Investigative Reporting v. Customs & Border

Prot., 436 F. Supp. 3d 90, 100 (D.D.C. 2019).

## III.    Analysis

The Court first considers the Privacy Act and FOIA claims relating to INSCOM's denial

of Haleem's 2023 request.  As a reminder, Plaintiff may obtain relief if he prevails under either

statute.  See Martin v. Off. of Special Counsel, 819 F.2d 1181, 1184 (D.C. Cir. 1987) (5 U.S.C.

§ 552a(q) explicitly provides that "[i]f a FOIA exemption covers the documents, but a Privacy

Act exemption does not, the documents must be released under the Privacy Act; if a Privacy

Act exemption but not a FOIA exemption applies, the documents must be released under FOIA.").  It

then assesses Haleem's grievance against USARC arising from his 2022 request.

A.    2023 Request

The Government has raised two threshold contentions related to the 2023 request:

Plaintiff never administratively exhausted his appeal regarding Defendants' search for responsive

records, and the Court cannot review withholdings via a duplicative request.  It will address both

issues and then turn to DOD's invoked exemptions and segregability.

1.    *Exhaustion*

The D.C. Circuit has repeatedly held that failure to exhaust administrative remedies

precludes judicial review.  In Magassa v. Transportation Security Administration, 2023 WL

8826564 (D.C. Cir. Dec. 21, 2023), for example, our Circuit explained that "[plaintiff]'s failure

to put [the agency] on notice of his objections . . . , or to give the agency an opportunity to

respond, precludes any . . . judicial review of those contentions."  Id., at *3; see also Hidalgo v.

FBI, 344 F.3d 1256, 1259 (D.C. Cir. 2003) ("[P]ermitting [plaintiff] to pursue judicial review without benefit of prior [agency] consideration would undercut the purposes of exhaustion, namely, preventing premature interference with agency processes, . . . afford[ing] the parties and the courts the benefit of [the agency's] experience and expertise, . . . [and] compil[ing] a record which is adequate for judicial review.") (cleaned up).

To exhaust its administrative remedies, a party that has received a dissatisfactory decision on a Privacy Act or FOIA request must appeal to the relevant agency.  See 5 U.S.C. § 552a(d)(2)–(3); see also id. § 552(a)(6)(A)(i) (agency must "notify the person making such request . . . of the right of such person to appeal to the head of the agency" any adverse determination).  If the party believes that the agency's response is still lacking, it then may file an action in district court.  See id. § 552(a)(4)(B).

Whereas a litigant generally gets only one bite at the apple — i.e., if she neglects to timely appeal to the agency, she is out of luck — Privacy Act and FOIA requesters may cure a failure to exhaust administrative remedies by filing an appeal at any time or a duplicate request that they subsequently appeal.  As long as a plaintiff has provided the agency an opportunity to review a denial before that denial is presented to a district court, she is considered to have exhausted her administrative remedies.  See, e.g., Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004) ("Wilbur . . . was simply [four years] late . . . .  Nevertheless, the CIA accepted the appeal, processed it, reviewed the initial determination and issued a final decision upholding the agency's prior determination.  Wilbur then availed himself of the right to seek judicial review . . . .  In these circumstances, the policies underlying the exhaustion requirement have been served."); Ning Ye v. Holder, 624 F. Supp. 2d 121, 124 n.2 (D.D.C. 2009) ("Should petitioner wish to obtain information from the DOJ, he could (re)submit [his requests], ensure

receipt, and properly begin the process (anew).") (alteration in original) (internal quotation marks omitted); Porter v. CIA, 579 F. Supp. 2d 121, 126 (D.D.C. 2008) ("Where a [FOIA] cause of action is barred by the statute of limitations, a plaintiff may 'simply refile his FOIA request tomorrow and restart the process.'") (quoting Spannaus v. U.S. DOJ, 824 F.2d 52, 61 (D.C. Cir. 1987)); Aftergood v. CIA, 225 F. Supp. 2d 27, 30 (D.D.C. 2002) ("[T]he plaintiff has . . . resurrected his claim by filing a new FOIA request.").

Haleem asserts that he exhausted his administrative remedies for his 2023 request and should thus be permitted to attack both the adequacy of the Government's records search and its withholdings in this suit. See ECF No. 30 (Pl. Opp. & Cross-MSJ) at 6–10. Defendants rejoin that Plaintiff never exhausted his remedies regarding the search and that duplicate requests to review withholdings cannot be assessed on the merits. See Def. MSJ at 8–12; ECF No. 32 (Def. Reply & Opp.) at 8–10.

Turning first to the search, Plaintiff admits that he "did not explicitly appeal the adequacy of the [Defendants'] search" in his 2023 request. See Pl. Opp. & Cross-MSJ at 6. He nevertheless argues that since Defendants denied his request as duplicative and would have given him the same response regardless of whether he had included the search explicitly in this request, his omission is immaterial, and he has thus exhausted his administrative remedies as to the search. Id. Haleem himself acknowledges the weakness of this argument, noting that his omission of the search in his request "means . . . he potentially might not be able to challenge the adequacy of the search before this Court." ECF No. 34 (Pl. Reply) at 4. He is correct. Plaintiff's initial 2023 request stated only that he was seeking "[t]he 113 pages that have been withheld" and "a review of the redactions asserted by INSCOM," and his appeal simply restated his desire for the 113 pages. See Heaton Decl., ¶ 16. Defendants were therefore never put on

7

notice of any issues with their search before this suit.  The Court will thus abstain from reviewing the sufficiency of the Government's records search.

Haleem fares better in seeking to appeal the Department's claimed withholdings. Defendants assert that while Plaintiff did timely appeal his 2023 request for the withheld and redacted documents, it was a duplicative request, and appeals of such requests can be reviewed only to assess their similarity to the original request, not their merits.  See Def. Reply & Opp. at 7–9.  Bolstering this point, Defendants cite Toensing v. U.S. Department of Justice, 890 F. Supp. 2d 121 (D.D.C. 2012), which declined to review a duplicative request regarding withholdings. See Def. MSJ at 10.  It held that "[w]hen withholding decisions are made in an unexhausted request, a subsequent, identical request cannot cure a prior failure to exhaust."  Toensing, 890 F. Supp. 2d at 140.  This is because reviewing such requests would "require an agency . . . to reassess any previous withholding decisions made," but such "decisions are often the most labor-intensive and complicated aspect of an agency's FOIA response efforts."  Id.

Even were that case binding, the court there ultimately declined to review the withholdings for lack of exhaustion, not because the request was a duplicate.  See id. at 137 (explaining plaintiffs did not style their duplicative request as an appeal, so no appeal had been put before agency).  While discouraging entirely duplicative requests, the court left the door open for requests that were more targeted than the original, such as Haleem's 2023 request.  Id. at 140 (stating that it is an "uncontroversial proposition that a FOIA requester is 'perfectly free to file an additional FOIA request' that is more 'tailored' to the documents she is seeking") (quoting Citizens for Responsibility & Ethics in Wash. v. DOI, 503 F. Supp. 2d 88, 100 (D.D.C. 2007)).

Here, Haleem did not submit a timely appeal following the Department's 2022 decision but instead, a year later, filed a duplicative request for the withheld and redacted documents.  See

Heaton Decl., ¶ 16.  Defendants were then given an opportunity to review their withholdings and redactions, which they did not do, and instead denied the request without acting.  See Pl. Resp. to SUMF, ¶ 21.  Plaintiff appealed that decision, but the agency again declined to review its withholdings.  See id., ¶ 23; Ltr. from Assoc. Deputy General Counsel to Pl., Sept. 28, 2023 (taking no action on request "due to the request being a duplicate of [the] original request").  He has thus exhausted his administrative remedies in relation to his 2023 request, and his claims can be assessed on the merits.

2. *Exemptions*

a.    Privacy Act Exemption (k)(2)

The Privacy Act provides individuals access to the records that government agencies maintain on them unless an exemption applies.  Exemption (k)(2) states that agencies may refuse to release "investigatory material compiled for law enforcement purposes."  5 U.S.C. § 552a(k)(2).  The exemption specifies, however, that "if any individual is denied any . . . privilege . . . for which he would otherwise be eligible[] as a result of the maintenance of such material, such material shall be provided to [that] individual."  Id.  The Government invokes this exemption to withhold the 113 pages at issue, claiming that they encompass "investigatory material that was compiled for law enforcement purposes, including sensitive intelligence methods and techniques."  Def. MSJ at 16.

Plaintiff does not dispute that the records are covered under the exemption but asserts that it is inapplicable here because he would have the privilege of his security clearance if not for the maintenance of the 113 pages at issue.  See Pl. Opp & Cross-MSJ at 13–14; Pl. Reply at 12–13. To address the interesting questions of whether a security clearance constitutes a privilege and whether the maintenance of the sought records deprived Haleem of the clearance, the Court held

oral argument on November 22, 2024. Sidestepping the issues, the Government pointed out there that they were irrelevant given that DCSA did not rely on those records in its revocation decision. Haleem contested that point, so the Court ordered supplemental briefing.

In that briefing, the best argument that Plaintiff can muster is that government declarant Michael Heaton has insufficient personal knowledge to proclaim which documents the Government relied on and that it would be "nonsensical" if the agency had not relied on the 113 pages. See ECF No. 36 (Supp. Brief) at 5–6. Ergo, it must have done so. Id. at 6–8.

The Court disagrees. Heaton clearly has the requisite understanding to be a declarant given his role as Director of INSCOM. See ECF No. 37-1 (Second Supp. Michael T. Heaton Decl.), ¶ 1 (detailing that Heaton has Initial Denial Authority for all Privacy Act requests related to Army intelligence and security records). Even were that not the case, however, Defendants provided two supplemental declarations from DCSA officials who were directly involved in the revocation decision that support Heaton's statements. See generally ECF Nos. 37-3 (Crystal L. Klink Decl.), ¶ 1 (Personnel Security Specialist at DCSA); 37-4 (Joy F. Greene Decl.), ¶ 1 (Supervisory Government Information Specialist for Freedom of Information and Privacy Office for Adjudications at DCSA). The Department's affidavits are dispositive in proving that it did not rely on the pages in question to revoke Haleem's clearance. See Klink Decl., ¶ 5 ("Aside from the nine pages from the Army Investigative Records Repository extract, I did not review any other pages from the Army investigative file."); Greene Decl., ¶¶ 4–5. Indeed, such pages were never even provided to DCSA "for use or consideration in their security investigative or adjudicative processes." ECF No. 1-1 at ECF p. 50 (March 24, 2023, Ltr. from Army to Haleem); Def. MSJ at 3–4; Resp. to Supp. Brief at 1–2. As Haleem's clearance could not have

been revoked based on the maintenance of the pages at issue, the exception does not apply. Defendants' withholdings under Exemption (k)(2) are thus justified.

> b.    FOIA Exemption 7(E)

Under FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . [,] shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  If the records fall into one of nine statutorily created exemptions, however, the Government need not turn them over.  Id. § 552(b)(1)–(9).  To show that an exemption applies and justifies the withholding of records, the Government "must provide 'a relatively detailed justification'" for its withholding, "specifically identifying the reasons why [the] exemption is relevant."  Morley v. CIA, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (quoting King v. DOJ, 830 F.2d 210, 219 (D.C. Cir. 1987)).  This Court can compel the release of any records that do not satisfy the requirements of at least one exemption. See Reps. Comm. for Freedom of Press, 489 U.S. at 755.

At issue here is Exemption 7(E), which affords protection to law-enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); see Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011) (applying "risk of circumvention" standard to law-enforcement techniques and procedures); Mayer Brown LLP v. IRS, 562 F.3d 1190, 1193 (D.C. Cir. 2009) ("[T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a

reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.").

     The Government need clear only a low bar to withhold information under Exemption 7(E). See McClanahan v. DOJ, 204 F. Supp. 3d 30, 54 (D.D.C. 2016). It must, however, provide at least enough information for the Court to logically deduce both that the information reveals tactics in law-enforcement investigations or prosecutions, and that such disclosure might create a risk of circumvention of the law. See Clemente v. FBI, 741 F. Supp. 2d 64, 88 (D.D.C. 2010); Blackwell, 646 F.3d at 42. "Generic portrayals of categories of documents and vaguely formulated descriptions will not suffice." Am. Immigr. Council v. DHS, 950 F. Supp. 2d 221, 246 (D.D.C. 2013); see also Dent v. Exec. Off. U.S. Att'ys, 926 F. Supp. 2d 257, 272 (D.D.C. 2013) ("Notwithstanding the categorical protection to law enforcement techniques and procedures afforded under the first clause of Exemption 7(E), no agency can rely on a declaration written in vague terms or in a conclusory manner.") (citation omitted).

     Plaintiff argues that Defendants' "quintessential generic, conclusory, and speculative response" explaining their Exemption 7(E) withholdings does not meet the standard. See Pl. Opp. & Cross-MSJ at 18. He concedes that the records were compiled for law-enforcement purposes but disputes that they disclose techniques and procedures for law-enforcement investigations and that their release would create a risk of circumvention of the law. Id. at 16–18. The Department responds that it invoked Exemption 7(E) because the records identify "the specific counterintelligence investigative methods, technique[s] and procedures employed during the conduct of a National Security Crime investigation[]," as well as "specific intelligence techniques and targets." Def. MSJ at 34. Addressing circumvention, through the declaration of Michael Heaton, Defendants state that the disclosure of this material would "compromise . . . the

sensitive intelligence source[s] and methods as outlined in [the] Army Security Classification guidelines" and therefore "allow individual[]s and foreign intelligence entities to circumvent U.S. laws and efforts to protect national security information."  Heaton Decl., ¶ 39.

Previous courts have found that if a declarant states that the withheld information regards a technique or procedure used for law-enforcement investigations, the Government satisfies that portion of the Exemption 7(E) requirements.  See Blackwell, 646 F.3d at 42.  Heaton declared that the pages detailed procedures and techniques used for law-enforcement purposes, and — after conducting an *in camera* review of the 113 pages at issue — the Court confirms that this is true regarding the majority of the documents.  The following pages, however, do not regard such procedures or techniques but are also non-responsive: 1–4, 9–12, and 80–88.  Our Circuit has clarified that non-exempt, non-responsive material should be released under FOIA if it is part of a broader responsive record.  See Am. Immigr. Law. Ass'n v. Exec. Off. Immigr. Rev., 830 F. 3d 667, 678–79 (D.C. Cir. 2016) ("[O]nce an agency itself identifies a particular document or collection of material — such as a chain of emails — as a responsive 'record,' the only information the agency may redact from that record is that falling within one of the statutory exemptions.").  Since the pages at issue are part of a collection of documents that DOD has labeled as a responsive record, the Court will order their release.

To withhold the other 96 pages, the Government must also prove that the release of the documents creates a risk of circumvention of the law.  In Blackwell, our Circuit held that simple statements, such as a claim that the information at issue "could enable criminals to employ countermeasures to avoid detection," could satisfy the 7(E) requirements.  See 646 F.3d at 42.  The Department's justification is similar here.  In any event, the Court's *in camera* review also supports DOD's assertion that all responsive pages expose the information that Defendants

gather and how it is evaluated when investigating suspicious activity.  The Court thus agrees that releasing this material would create a risk of circumvention of the law and that the invocation of Exemption 7(E) is therefore warranted.

There is, however, one last hurdle before documents may be withheld under FOIA. Under a 2016 amendment to the Act, an agency may not withhold materials even if they are exempt unless it "reasonably foresees that disclosure would harm an interest protected by" a FOIA exemption.  See 5 U.S.C. § 552(a)(8)(A)(i)(I).  To clear this bar, an agency must "articulate both the nature of the harm from release and the link between the specified harm and specific information contained in the material withheld."  Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 369 (D.C. Cir. 2021) (cleaned up).  In Exemption 7(E) cases, however, courts have held that "because the exemption already requires a showing of risk of circumvention of the law, no further foreseeable-harm analysis is necessary."  Gun Owners of Am., Inc. v. FBI, 2024 WL 195829, at *4 (D.D.C. Jan. 18, 2024); see also 100Reporters v. Dep't of State, 602 F. Supp. 3d 41, 83 (D.D.C. 2022); Buzzfeed, Inc. v. DHS, 610 F. Supp. 3d 139, 148 n.1 (D.D.C. 2022).  The Court thus finds that DOD fulfills the foreseeable-harm requirement.

3.  *Segregability*

FOIA requires that "[a]ny reasonably segregable portion of a record . . . be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Haleem asserts that the Government could not possibly have conducted a proper segregability review because it overused Privacy Act Exemption (k)(2) and FOIA Exemption 7(E) throughout the documents at issue.  See Pl. Opp & Cross-MSJ at 18–19.  He continues that the use of the two allegedly improper exemptions "has resulted in such heavy redacting that [Defendants have] gone ahead and withheld . . . entire document[s]" wrongfully.  See Pl. Reply

at 20.  The Government contends that it cannot segregate any additional non-exempt information from the exempt material.  See Def. MSJ at 35–36.  To support this claim, Heaton states that he "thoroughly review[ed] all the documents released, page-by-page and line-by-line . . . [,] and can confirm all non-exempted portions of the records and information in question were released to the Plaintiff."  Heaton Decl., ¶ 37.  Defendants further remind the Court that agencies are not required to segregate non-exempt material if it would "impose significant costs on the agency and produce an edited document with little informational value."  Def. MSJ at 36 (quoting Neufeld v. IRS, 646 F.2d 661, 666 (D.C. Cir. 1981)); see also Elec. Priv. Info. Ctr. v. Off. Dir. Nat'l Intel., 982 F. Supp. 2d 21, 31 (D.D.C. 2013) (quoting Neufeld, 646 F.2d at 666).

After reviewing the material *in camera*, the Court finds that no further non-exempt information must be released from the remaining 96 responsive pages in question.  These pages detail the information that DOD compiles in investigations into suspicious activity, and their release in any part would illuminate the material that the Department assesses when examining a threat to national security.

### B.  2022 Request

Haleem next asks the Court to find that INSCOM's referral of 33 responsive pages to USARC for review in 2022 was "botched" and order that he receive attorney fees as compensation.  See Pl. Opp. & Cross MSJ at 19–24.  The Government asserts that this issue is now moot because all documents that were referred to USARC have since been processed by USARC or another section of DOD and subsequently released or withheld from Haleem.  See Def. MSJ at 37–40.  It is correct.

Title 5 U.S.C. § 552(a)(4)(B) only authorizes a federal court to "enjoin the agency from withholding agency records and to order the production of any agency records improperly

withheld."  Thus, "[o]nce the records are produced[,] the substance of the controversy disappears

and becomes moot since the disclosure which the suit seeks has already been made."  Crooker v.

U.S. Dep't of State, 628 F.2d 9, 10 (D.C. Cir. 1980); see Perry v. Block, 684 F.2d 121, 125 (D.C.

Cir. 1982) ("[H]owever fitful or delayed the release of information under the FOIA may be, once

all requested records are surrendered, federal courts have no further statutory function to

perform.").  That is the case here: all 33 pages have either been released to Plaintiff or

appropriately withheld as discussed above.  Any claim related to the 2022 records is thus moot.

## IV.    Conclusion

For the foregoing reasons, the Court will grant in part and deny in part both Motions for

Summary Judgment.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date:  December 18, 2024

16