**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DEEN HALEEM,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 23-1471 (JEB)** |
| **UNITED STATES DEPARTMENT OF DEFENSE, *et al.*,** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Deen Haleem has served in the military for over four decades, most recently as a
Master Sergeant in the U.S. Army Reserves. That role required him to hold a Top Secret security
clearance. After the Department of Defense informed Haleem that it intended to revoke his
clearance, he submitted a Privacy Act and Freedom of Information Act request for documents
relating to the revocation. Unhappy with what he received, Haleem commenced this suit in May
2023. Although Plaintiff did not succeed on any of his claims before this Court, he did receive
additional records from the Department of Defense during litigation. He now moves for attorney
fees and costs on the ground that he substantially prevailed in this FOIA suit. While the Court
finds that Haleem is eligible for fees, he has not shown that he is entitled to an award. The Court
will thus deny Plaintiff's Motion.

### I.    Background

As past Opinions detail the background of this suit, <u>see, e.g.</u>, <u>Haleem v. U.S. Dep't of
Def.</u>, 2025 WL 2097495 (D.D.C. July 25, 2025); <u>Haleem v. U.S. Dep't of Def.</u>, 2024 WL 230289

(D.D.C. Jan. 22, 2024), the Court will outline only the facts relevant to the outstanding Motion for Attorney Fees.  In February 2022, DoD notified Haleem of its preliminary decision to revoke his Top Secret security clearance.  See ECF Nos. 30-2 (Pl. Resp. SUMF), ¶¶ 1–2; 1 (Compl.), ¶ 43.  Haleem responded with a Privacy Act and FOIA request to U.S. Army Intelligence and Security Command (INSCOM) for records relating to the revocation.  See ECF No. 29-2 (July Michael Heaton Declaration), ¶ 3; Pl. Resp. SUMF, ¶ 5.  In response, INSCOM released 432 pages to Plaintiff, withheld 113 pages that it claimed satisfied various exemptions under those statutes, and referred 33 pages to the U.S. Army Reserve Command (USARC) for further review.  See July Heaton Decl., ¶¶ 11–12, 16; Pl. Resp. SUMF, ¶ 12.  Roughly a year after his initial request, Haleem submitted another request for the withheld 113 pages and a review of redactions.  See Pl. Resp. SUMF, ¶¶ 17–18, 20.  The Department denied the request as duplicative.  Id., ¶ 21.

Unsatisfied with DoD's disclosures, Haleem filed this suit in May 2023 to recover the withheld 113 pages and expedite USARC review of the 33 pages.  See generally Compl., ¶¶ 78–141.  Defendants — the initial Complaint listed both DoD and the Department of Justice as parties — then moved to dismiss the claims.  See ECF No. 11 (Def. MTD).  On January 22, 2024, the Court granted that Motion in part, including dismissing Justice as a party and most claims against DoD, and denied it in part.  Haleem, 2024 WL 230289, at *15.  Left outstanding were claims that: "(a) [T]he Army Intelligence and Security Command's denial of Plaintiff's 2023 request violated the Privacy Act, (b) the U.S. Army Reserve Command's failure to respond to his [referred] 2022 request violated the Freedom of Information Act, and (c) the Army Intelligence and Security Command's denial of his 2023 request violated the Freedom of Information Act."  ECF No. 17 (Jan. Order) at 1.

Both parties then moved for summary judgment on the outstanding issues.  See ECF Nos. 29–34.  After reviewing the withheld 113 pages *in camera*, the Court initially ordered the release of only 17 pages.  See ECF No. 39 (Dec. Order).  DoD then moved for reconsideration.  See ECF No. 44 (Mot. for Recons.).  After additional briefing and a hearing, in which the Department provided a fuller explanation for the withholding, the Court granted the Motion for Reconsideration, agreeing that those 17 pages could be withheld as law-enforcement techniques under Exemption 7(E).  See ECF No. 50 (July Order); Haleem, 2025 WL 2097495, at *3.

Although the litigation focused primarily on the 113 withheld pages, there were also the 33 pages seemingly under review by USARC.  On August 10, 2023 — four months after this lawsuit was filed and over a year and a half after the initial FOIA request — INSCOM informed Haleem that USARC had returned the pages to it without action.  See Pl. Resp. SUMF, ¶ 27. Following receipt of the pages, INSCOM referred them to Central Command for review.  Id., ¶ 28.  Central Command withheld 8 pages and returned the other 25 to INSCOM in early May 2025.  Id., ¶ 29; ECF No. 29-4 (Brandon Tegtmeier Declaration), ¶ 6.  The 25 pages were partially released to Haleem on May 21, roughly a year after the filing of this suit and two years after his initial FOIA request.  See Pl. Resp. SUMF, ¶ 30.

Plaintiff now seeks to recover attorney fees for the expense of the litigation.

## II.    Legal Standard

Under 5 U.S.C. § 552(a)(4)(E)(i), a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed" in his FOIA request.  See Brayton v. Off. of the U.S. Trade Rep., 641 F.3d 521, 524 (D.C. Cir. 2011).  "This language naturally divides the attorney-fee inquiry into two prongs, which our case law has long described as fee 'eligibility' and fee

'entitlement.'"  Id. (quoting Jud. Watch, Inc. v. U.S. Dep't of Com., 470 F.3d 363, 368–69 (D.C. Cir. 2006)).  Complainants are "eligible" for an award if they have "substantially prevailed."  Id.; Negley v. FBI, 818 F. Supp. 2d 69, 72 (D.D.C. 2011).  If the complainant is eligible, the court must then "consider[] a variety of factors" to determine whether he is "entitled" to fees.  Brayton, 641 F.3d at 524–25; see also Davy v. CIA, 550 F.3d 1155, 1158–59 (D.C. Cir. 2008) (outlining relevant factors).  Finally, if the complainant is both eligible and entitled to fees, the court proceeds to the final step of "analyz[ing] whether the amount of the fee request is reasonable." Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec., 811 F. Supp. 2d 216, 237 (D.D.C. 2011).

## III.    Analysis

The Court need look at only eligibility and entitlement to resolve the dispute here.

### A.    Eligibility

There are two ways for a complainant to substantially prevail.  First, he may be vindicated through a judicial order, written agreement, or consent decree.  See 5 U.S.C. § 552(a)(4)(E)(ii)(I).  Second, he may also prevail if the agency voluntarily or unilaterally changes its position, so long as the claim is not insubstantial.  Id., § 552(a)(4)(E)(ii)(II).  The parties seemingly agree that the first avenue is inapplicable here.  See ECF Nos. 53-1 (Pl. Fee Mot.) at 5–7; 55 (Def. Fee Mot. Opp.) at 6–7.  That makes sense given that the Court ultimately ruled for Defendant.  The outstanding question, therefore, is whether Plaintiff's filing of the lawsuit led the agency to change its position with respect to the initial request.

Courts analyze this question under the catalyst test: "[T]he question under the catalyst theory is whether the 'institution and prosecution of the litigation caused the agency to release the documents obtained.'"  Grand Canyon Tr. v. Bernhardt, 947 F.3d 94, 97 (D.C. Cir. 2020) (quoting Church of Scientology v. Harris, 653 F.2d 584, 587 (D.C. Cir. 1981)) (cleaned up).

While "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation," id. (quoting Weisberg v. U.S. Dep't of Just., 745 F.2d 1476, 1496 (D.C. Cir. 1984)), it is "certainly a salient factor." Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec., 2009 WL 1743757, at *3 (D.D.C. June 15, 2009).  Indicia of causation include the length of the delay, Harvey v. Lynch, 178 F. Supp. 3d 5, 8 (D.D.C. 2016), aff'd sub nom. Harvey v. Sessions, 2017 WL 4220323 (D.C. Cir. July 14, 2017), and any justification an agency might have for inaction.  Calypso Cargo Ltd. v. U.S. Coast Guard, 850 F. Supp. 2d 1, 5 (D.D.C. 2011), aff'd, 2012 WL 10236551 (D.C. Cir. Nov. 1, 2012).

While the overall dispute between the parties has involved numerous documents, the suit sought only the withheld 113 pages and the 33 pages initially referred to USARC.  See Compl., ¶¶ 78–141.  Ultimately, only 25 of the latter group were produced.  See Pl. Fee Mot. at 2–4; Def. Fee Mot. Opp. at 8.  Haleem nonetheless argues that he has substantially prevailed, as "the record demonstrates that it was the filing of Plaintiff's complaint that caused Defendants to process the request."  Pl. Fee Mot. at 5.  Defendant, unsurprisingly, disagrees.

Plaintiff first points out that the documents at issue were produced a considerable amount of time after the initial request.  Id.  DoD correctly responds that delay alone is not enough to establish that litigation caused the document production.  See Def. Fee Mot. Opp. at 9.  It relies on Zynovieva v. Deptartment of State, 2023 WL 2755599 (D.D.C. Mar. 31, 2023), for the proposition that "some amount of delay in excess of the statutory limit is, regrettably, a common feature of the FOIA process."  Def. Fee Mot. Opp. at 9 (quoting Zynovieva, 2023 WL 2755599, at *6).  In Zynovieva, however, the delay was just under 150 business days from request to receipt.  See 2023 WL 2755599, at *6.  Here, Haleem waited over two years for the final documents.  See Pl. Fee Mot. at 5; Def. Fee Mot. Opp. at 8.  While elapsed time alone is not

enough to determine that litigation drove the document production, the period here suggests that litigation likely played a part.  See Harvey, 178 F. Supp. at 8 ("[A]n unusually long delay might give rise to the inference that the agency forgot about, or sought to ignore, a FOIA requester's request.").

Next, Haleem argues that there is "no evidence that Defendant was going to take any action on [his] request anytime soon prior to the filing of this lawsuit."  Pl. Fee Mot. at 6.  DoD responds that the processing of the initial request — via the referral to USARC — commenced prior to the lawsuit; furthermore, subsequent processing by USARC did not occur until many months after facing suit.  See Def. Fee Mot. Opp. at 9.  Defendant asserts that our situation is similar to many cases where "[t]he wheels had been set in motion months before [the] suit was filed," Conservation Force v. Salazar, 916 F. Supp. 2d 15, 21 (D.D.C. 2013), and "[d]efendant has provided a detailed timeline of events leading up to the release of the requested records." Calypso Cargo, 850 F. Supp. 2d at 5.

In all those cases, however, the detailed timeline demonstrated that work on the FOIA request was ongoing.  For example, in Calypso Cargo, the defendant provided a detailed summary of each step of the process: a two-month search for documents, a seventh-month review of the documents by the legal office, and a final few-week correction and review.  Id. at 4–5; see also Am. First Legal Found. v. U.S. Dep't of Energy, 2024 WL 5484078, at *3–4 (D.D.C. Dec. 23, 2024), R. & R. adopted as modified, 2025 WL 1276808 (D.D.C. Mar. 28, 2025) (detailing six different steps department took over a year in responding to FOIA request).  Here, DoD has provided some details on the timeline, but it is a far cry from the level of detail in the cases upon which it relies.  See ECF Nos. 55-1 (Dec. Michael Heaton Declaration), ¶¶ 24–30; 55-2 (Cedrick Lowe Declaration), ¶¶ 7–14; 55-3 (Thomas Adams Declaration), ¶¶ 3–4.

Collectively, this information shows an imperfect process replete with "administrative errors by USARC," Dec. Heaton Decl., ¶ 27, and mismarked FOIA referrals.  See Lowe Decl., ¶ 10.  Notably, USARC provides no explanation of its activities during the ten-month period from November 1, 2022, to August 10, 2023.  See Adams Decl., ¶¶ 3–4.  While the wheels of the FOIA request may have been in motion prior to the filing of the suit, it appears that there was a roadblock once the request was sent to USARC.  That barrier was cleared only after the lawsuit was filed.  As Plaintiff rightly highlights, furthermore, unlike the volume of materials under review in Calypso Cargo (over 1000 pages), there were only 33 pages at issue here.  Considering the paucity of material, the length of time of review, and the details provided by the Government, it appears that, on balance, the lawsuit was the catalyst for the processing of the USARC referral.

Defendant nonetheless contends that any production of the USARC documents is irrelevant to a fee award because "that specific claim was never before this Court."  Def. Fee Mot. Opp. at 10.  Rather, in the Government's eyes, the only issue the Court considered was the "non-response from USARC."  Id. at 11.  And that claim was dismissed as moot.  Id. at 11–12.  This argument misses the forest for the trees.  First, Plaintiff's claim focused on the production of the USARC documents, not just their delay.  Second, the specific claim relating to the 2022 records was dismissed as moot after the production of a portion of those pages.  See Haleem v. U.S. Dep't of Def., 2024 WL 5159073, at *8 (D.D.C. Dec. 18, 2024), rev'd on other grounds, 2025 WL 2097495 (D.D.C. July 25, 2025); Def. Fee Mot. Opp. at 11–12.  The question at issue here is whether the filing of the lawsuit resulted in the production of any of the documents at issue in the case.  Grand Canyon Tr., 947 F.3d at 97.  The balance of the evidence suggests that the answer is yes.  Plaintiff has thus cleared the first bar and demonstrated that he is eligible for fees.

B.    <u>Entitlement</u>

As explained above, while a plaintiff might be <u>eligible</u> for attorney fees, that does not mean that he is <u>entitled</u> to such an award.  <u>Brayton</u>, 641 F.3d at 524.  Courts in this circuit consider four factors under the entitlement prong: "(1) [T]he public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." <u>Davy</u>, 550 F.3d at 1159.  Factors 2 and 3 are generally considered together.  <u>Id.</u> at 1160; <u>McKinley v. Fed. Hous. Fin. Agency</u>, 739 F.3d 707, 711 (D.C. Cir. 2014).  "The sifting of those criteria over the facts of a case is a matter of district court discretion," <u>Tax Analysts v. U.S. Dep't of Just.</u>, 965 F.2d 1092, 1094 (D.C. Cir. 1992), and "[n]o one factor is dispositive."  <u>Davy</u>, 550 F.3d at 1159.  The Court looks at each, combining the second and third.

1.    *Public Benefit*

The greater the public benefit, the more likely it is that Plaintiff will be entitled to fees. <u>See</u> <u>STS Energy Partners LP v. FERC</u>, 214 F. Supp. 3d 66, 69 (D.D.C. 2016).  Haleem advances two related arguments that the release of these records confers a public benefit.  First, he maintains that there is such a benefit in learning about the soundness of agency actions.  <u>See</u> Pl. Fee Mot. at 8 ("[T]he litigation served a public purpose: ensuring the government complies with its statutory duties, deterring improper withholding, and holding agencies accountable."); ECF No. 56 (Pl. Fee Mot. Reply) at 9 ("Most importantly, 'courts have repeatedly recognized a public interest in understanding the thoroughness, fairness, and accuracy of government investigations and operations.'") (quoting <u>N.Y. Times Co. v. U.S. Def. Counterintelligence & Sec. Agency</u>, 806 F. Supp. 3d 444, 452 (S.D.N.Y. 2025)).  Second, Haleem contends that there is a public benefit in shining light on how the military treats personnel and records.  <u>See</u> Pl. Fee Mot. at 8 ("The

public would benefit from understanding how members of the military are wrongfully targeted based on prejudice and racism."); Pl. Fee Mot. Reply at 10 ("[The lawsuit] shed additional light on how the Department of War stores records related to security clearances and interacts with other federal agencies . . . .").

Defendant responds that there is no public benefit here, primarily because the records are specific to Haleem.  See Def. Fee Mot. Opp. at 16 ("Given how specific these records are to Haleem, any public benefit in disclosure is virtually nonexistent.").  DoD also argues that the lawsuit did not reveal systemic deficiencies.  Id. at 17 ("The Department fails to see how this lawsuit could have possibly demonstrated that the Department did not conduct an adequate search when the Court declined to even consider such a claim.").  Finally, it asserts that the lack of evidence of public dissemination of the documents undermines the public-benefit claim.  Id. at 18.

DoD has the better of this dispute.  To begin, Plaintiff's reliance on New York Times is misplaced.  There, while the data released was "only one data point," the court found that there was a public benefit given that the data related to Elon Musk.  See 806 F.3d at 452 ("[The data point] is a significant one, given Musk's prominence and level of authority.") (emphasis added) (internal quotation marks omitted).  Additionally, while Haleem is correct that there is a public benefit when the release "adds to the fund of knowledge that citizens can use to make informed political or social decisions," Pl. Fee Mot. at 8, there is no evidence that the released pages here will "contribute to the public's ability to make vital political choices."  Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995).

Perhaps acknowledging the weakness of this argument, Haleem offers another theory in his Reply, relying on Negley, 818 F. Supp. 2d.  See Pl. Fee Mot. Reply at 10.  There, the court

found that while the documents sought were personal, there was a benefit to citizens "seeking to find out what their government is up to." Negley, 818 F. Supp. 2d. at 75. There is no similar benefit here. In Negley, the litigation discussed previously unidentified databases and provided information on "how those databases are indexed." Id. In addition to the novelty of the information, the court found it especially valuable to the public "given the FBI's long history of recalcitrance and grudging compliance with FOIA." Id. (internal quotation marks omitted). Plaintiff has not proposed, and the Court has not identified, any similar novel findings or recalcitrance here. Factor 1 thus weighs in Defendant's favor.

2. *Private Incentive*

"The second and third factors . . . assess whether a plaintiff has sufficient private incentive to seek disclosure without attorney's fees." Davy, 550 F.3d at 1160 (internal quotation marks omitted). The private incentive "need not be strictly commercial; any private interest will do." Tax Analysts, 965 F.2d at 1095.

Haleem had such a private interest here because he was in the midst of fighting to restore his security clearance and to understand why it was revoked. See Def. Fee Mot. Opp. at 19 (highlighting examples from Complaint). While he states that "personal interest was but one factor in seeking the documents," he does not point to what those other factors might be. See Pl. Fee Mot. at 10. Additionally, given that there is not a public benefit, there is no need to assess whether public and private benefits are intertwined. See Playboy Enters. v. U.S. Customs Serv., 959 F. Supp 11, 16 (D.D.C. 1997). Without the former, only the latter benefits remain. Factors 2 and 3 thus weigh in favor of DoD.

3.      *Reasonableness of Withholding*

"The fourth factor considers whether the agency's opposition to disclosure had a reasonable basis in law and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior."  Davy, 550 F.3d at 1162 (cleaned up).

Plaintiff does not spend much time with the fourth factor, as he rightly notes that the burden rests with Defendant.  See Pl. Fee. Mot. at 10; Davy, 550 F.3d at 1163 ("The question is . . . whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [Plaintiff] filed suit.").  What ink Plaintiff does spill mostly recounts the delay in receiving any documents.  See Pl. Fee Mot. at 10; Pl. Fee Mot. Reply at 11–12.  DoD, on the other hand, primarily focuses on the 113-page request and does not address the 25 pages ultimately released.  See Def. Fee Mot. Opp. at 21–22.  Yet the latter pages are the only ones at issue in this fee Motion.  Without any real defense position here, the last factor lands in Haleem's column.

* * *

While Defendant's withholding may have been unreasonable, that is outweighed by Plaintiff's substantial private interest in bringing this suit and the absence of a resulting public benefit.  The Court therefore concludes that Plaintiff is not entitled to attorney fees.

IV.    **Conclusion**

While the Court finds Plaintiff eligible for attorney fees, he has not shown that he is entitled to an award.  As such, the Court will issue a contemporaneous Order denying Plaintiff's Motion.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  March 2, 2026